Dickinson vs. Norwegian Plow Co.

DICKINSON, Appellant, vs. NORWEGIAN PLOW COMPANY, Respondent.

*October 15 — November 1, 1898.*

*Master and servant: Contract of employment: Evidence: Counterclaim for time lost: Waiver.*

1. In an action against a corporation by an employee, to recover the balance of his salary for a year's service under a contract made by the secretary of such corporation, the testimony of such secretary that the employment was for one year cannot be rejected as being only a conclusion of law.

2. An employee hired for one year, who continues his services into the next year without any new arrangement, will, in the absence of evidence to the contrary, be presumed to be employed for another year on the same terms, and neither party can change such presumed contract without the consent of the other.

3. An employer kept no record of the time lost on account of sickness, etc., by one whom he employed by the year, and made no charge against him therefor, but at the end of each year settled with him and paid him the balance due. On a final settlement the employer sought only to retain a certain sum by which he claimed the salary for the last year had been reduced. *Held,* that he thereby waived any claim for said loss of time.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

This was an action to recover $200, claimed to be due as a balance of salary for a year's services under an alleged employment for the whole year at $1,500 per annum. The answer consisted of a general denial and a counterclaim for $600 for time lost. The evidence showed that in the fall of 1888 the plaintiff had a conversation with one Mitchel, the secretary and general manager of the defendant corporation, with regard to entering the employment of the defendant for a year at the rate of $1,500. No contract was, however, made at the time; but on the 6th of May, 1889, the plaintiff, in reply to an inquiry from the defendant as to whether he

was still at liberty to enter the defendant's employ, sent the defendant the following letter:

"C. W. Mitchel, Sec'y, Dubuque, Ia.

"Dear Sir: I had hoped I might be able to run over to Dubuque, Saturday, but could not get away. I have thought the matter over carefully, and decided to accept your offer, at $1,500 per annum, to begin June 1st. Nothing was said on the subject of a vacation, but it is to be understood, I suppose, that, if desirable, one can be had at a suitable time of year.                     Respectfully, C. W. DICKINSON."

A few days later Mitchel sent the following reply:

"C. W. Dickinson, Rock Falls, Ill.

"Dear Sir: We will accept your offer to come June 1st at a salary of $1,500 per annum. We hope the work and place will prove satisfactory to both parties. Have you a desk of your own?                     Yours, C. W. MITCHEL, Sec'y."

The plaintiff commenced to work for the defendant under the contract made by these letters June 1, 1889, and continued so to work until June 1, 1895, with no new agreement. He was paid at the rate of $1,500 up to the 1st of October, 1894, at which time the defendant's directors passed a vote in form reducing his salary to $1,200 per year.

When the plaintiff was informed of this action, some days afterwards, he refused to accept it, and insisted that his salary could not be reduced prior to the 1st of June, 1895. He kept on at work under this claim, but when he was settled with on June 1, 1895, the defendant refused to pay him at the rate of $1,500 per year after October 1, 1894, but paid him at the rate of $1,200 per year; thus leaving $200 unpaid, if in fact the plaintiff was employed for the entire year. There was evidence that the plaintiff had been absent from business at various times on account of sickness and other causes, which absences amounted to six months or more during his entire service, and these absences were made the foundation of the defendant's counterclaim. No charge had

ever been made on the books for such absences, nor any mention of them between the parties. On the other hand, when the final settlement was made about June 1, 1895, $81.71 was paid by the defendant in cash, and everything was understood to be settled between the parties, except the plaintiff's claim for $200.

The jury rendered a verdict against the plaintiff on his cause of action, and against the defendant on its cause of action, and judgment was entered dismissing the complaint, from which the plaintiff appeals.

For the appellant there was a brief by *McConnell & Schweizer*, and oral argument by *C. H. Schweizer*.

For the respondent there was a brief by *Fruit & Gordon*, and oral argument by *J. J. Fruit*.

WINSLOW, J. This action was here before upon appeal from a judgment of nonsuit. 96 Wis. 376. It was then held that there was sufficient evidence to require the submission to the jury of the question whether plaintiff's employment was for the entire year ending June 1, 1895. The case has been tried again, and the evidence on both sides is preserved in the bill of exceptions. From this evidence now before us there can be no doubt that the plaintiff's employment was understood on both sides to be an employment for an entire year when he went to work for the defendant June 1, 1889. Probably the letters of May 6th and 11th, set forth in the statement of facts, do not, as matter of law, establish that the hiring was for a year, although they are evidence from which such a hiring may be found; but in addition to these letters we have now affirmative evidence of Mr. Mitchel, the defendant's secretary and general manager, who hired the plaintiff, who says: "There was a stated period of employment, of one year." "When he [plaintiff] was employed in the first place, he was employed by the year." "He was employed for a year, and

he continued in that employment in that way, and was credited with a year's salary at the end of each year." This evidence cannot be disposed of by saying that it is a mere conclusion of law. It demonstrates beyond doubt that the defendant (which was acting through Mr. Mitchel, its manager), understood that the hiring was for a year. There is no doubt that the plaintiff understood it to be for a year. So we have the letters, which are capable of such a construction, understood by both parties as meaning a hiring for an entire year. Here is evidently a meeting of the minds of the parties upon the same proposition. Again, there is absolutely no fact nor item of evidence in the case which tends to show that any other kind of a contract was intended. Thus, the first year's work was done under a contract for an entire year, and at the end of that year nothing was said between the parties, but the plaintiff went on with his work into the second year, and the defendant credited up his salary at the same rate. At the end of the second year nothing was said, but the relations of the parties continued precisely as before up to October 1, 1894. Thus, the facts arose which call for the application of the first rule laid down in *Kellogg v. Citizens' Ins. Co.* 94 Wis. 554, namely, that where one serves another under a contract for an entire year, and continues his services into the next year without any new arrangement, it will be presumed that both parties consent to the continuance of the service for another year. This presumption arose when the plaintiff commenced his last year's work, in June, 1894; and it must prevail, unless there be a new agreement shown, or at least facts which are sufficient to rebut the legal presumption and show that a different hiring was in fact intended by the parties. There is no such agreement, nor are there any such facts in evidence; hence the presumption prevails. Therefore the last year's hiring is conclusively shown to be a hiring for a year, and it could not be changed by one of

the parties without the consent of the other. Hence the plaintiff was entitled to recover his salary for the last year at the full rate of $1,500 per annum.

There is no merit in the defendant's counterclaim for time lost. It is true that the plaintiff had lost an aggregate of several months' time during his six years of service; but no record was ever kept of such time lost, no charge ever made against him for it, though the books of account were carefully and accurately kept and balanced every year, no claim ever made against the plaintiff until this action was about to be commenced, and a settlement was made with the plaintiff of all matters between them (save the claim for $200), and the balance of $81.71 paid by the defendant to the plaintiff, although the fact of the time lost was well known. Furthermore his salary was always credited up in full, and the final settlement was made with full knowledge of all the facts. The case of *Prussing Vinegar Co. v. Meyer*, 26 Ill. App. 564, is almost identical in its facts, and the court there well says: "The legal inference to be drawn from these credits and the subsequent settlement is either a waiver on the part of the defendant of performance by Prussing of his part of the agreement during his illness, or a practical construction of the agreement by the parties to the effect that no deduction was to be made from Prussing's salary during such time as he should be thus disabled from service." In this case a settlement was made by the parties, with full knowledge of all the facts, of everything except the claim for $200, and no good reason is perceived why it should not be conclusive. The counterclaim should have been disallowed.

The plaintiff was entitled, upon the proofs, to have a verdict in his favor directed for the full amount of his claim.

*By the Court.*— Judgment reversed, and action remanded for a new trial.