Milwaukee Corrugating Co. v. Krueger, 184 Wis. 139.

MILWAUKEE CORRUGATING COMPANY, Respondent, vs. KRUEGER and others, imp., Appellants.

*March 12—June 3, 1924.*

*Master and servant: Contract of employment: For fixed or indefinite term: Parol evidence: Admissions: Allegation in pleading in prior litigation: Trade-names: Unfair competition: Damages: Evidence: Sufficiency: Judgment: Collateral attack.*

1. A formal written contract of employment as superintendent of a machinery department in a factory, at stated sums per month, for stated years, and providing for the assignment to the employer of inventions and patents made by an employee, is not subject to variation by parol as to the intention of the parties. p. 148.

Milwaukee Corrugating Co. v. Krueger, 184 Wis. 139.

2. A contract whereby the employer agreed to pay the employee "during the fiscal years 1918, 1919, and 1920 the sum of $375 per month; for the year 1921, $395.83 per month; for the year 1922, $416.66, and such other period after 1922 as the parties may mutually agree,. unless terminated by the death" of the employee, was not a contract binding the parties for the period of five years. p. 152.

3. In an action by a former employer of one of the defendants for an injunction and an accounting—plaintiff claiming that the contract of employment between it and such defendant was one for a period of five years and defendants (who had formed a business connection with such employee) claiming that it was terminable at will,—an allegation in a counterclaim in prior litigation wherein defendants stated that the contract was one for five years was merely an admission or opinion at that time as to the legal effect of a contract between other parties, and is not binding on the court in respect to the proper construction of the contract. p. 152.

4. To entitle plaintiff, in an action to restrain the use of a trade-name, to relief, it must show that it has suffered .some injury or show actual or probable deception or confusion on the part of its customers; and proof that on two or three occa-sions letters written to defendant came to plaintiff in envel-opes addressed to plaintiff was insufficient to show that defendant had palmed off its goods as those of plaintiff or that any one was deceived by the use of the trade-name. p. 153.

5. In an action for damages and for an accounting, based on unfair competition, evidence that one associated with defendant had appropriated advertising matter and cuts which had been used by plaintiff and that some of them were used by defendant is *held* to sustain a finding that defendant had used advertising methods in violation of plaintiff's rights. p. 154.

6. A judgment between two of the defendants in another court, adjudging the delivery of certain corporate stock to one of the defendants, against whom an execution was issued and the stock sold to plaintiff, could not be collaterally set aside by a judgment in another action on the ground that it was of no force or effect against the plaintiff. p. 154.

APPEAL from a judgment of the circuit court for Mil-waukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Af-firmed in part; reversed in part.*

This is an action to recover damages; to restrain defend-

ants *Krueger* and *Northern Corrugating Company* from carrying out an alleged conspiracy with defendants Flagge and Smith; to restrain defendants from building certain machines useful in plaintiff's industry; to compel the assignment of certain patents; and for an accounting of profits realized on the use and sale of certain machines.

Plaintiff is a corporation with its principal office in Milwaukee, engaged in the business of manufacturing many articles made from sheets of metal. Flagge was in the employ of plaintiff from 1907 until October 1, 1918, and for some time had been superintendent of its mechanical department. Defendant Smith had been in the employ of plaintiff as sales manager for several years, when, as claimed by plaintiff, he was discharged for misconduct.

Defendants *Krueger* resided in Green Bay; were laborers employed by others until they formed a partnership about 1910, the principal business of which was contract roofing in which they did manual labor; their business as partners had been successful until the formation of a corporation in December, 1918.

Flagge left the employment of plaintiff on or about October 2, 1918, and about a month afterward Flagge and Smith entered into negotiations with the defendants *Krueger* which resulted in the formation of the *Northern Corrugating Company,* when Smith and Flagge received stock of that company and assisted in carrying on its operations.

The following was the agreement between Flagge and the plaintiff:

"This agreement, entered into this 16th day of November, 1917, by and between the *Milwaukee Corrugating Company,* a Wisconsin corporation, of Milwaukee, Wisconsin, and Frank Flagge, of the same place, witnesseth:

"That said company hereby continues to employ said Flagge as superintendent of their machinery department in the city of Milwaukee and town of Greenfield, to perform such duties in relation thereto as said company shall direct

from time to time, and as are ordinarily performed by a superintendent of a machinery department. The said company agrees to pay the said Frank Flagge during the fiscal years 1918, 1919, and 1920 the sum of $375 per month; for the year 1921, $395.83 per month; for the year 1922, $416.66, and such other period after 1922 as the parties may mutually agree, unless terminated by the death of said Frank Flagge.

"And in consideration of said agreement on the part of said company the said Frank Flagge agrees to faithfully and diligently devote all his time, best efforts and energies to the service of said company as hereinbefore mentioned, and to perform such duties as may be assigned to him faithfully, honestly, and diligently, satisfactorily to said company, and to acquaint said company with all new mechanical ideas or suggestions occurring to him, to improve their tools, machines, and implements or any goods desired to be manufactured by them. ·

"And it is further mutually agreed that should the said Flagge, during said time, invent any new device which the said company desires to make use of in their business, he shall assign any and all inventions and devices by him to them, and shall execute any and all papers desired by them for the procuring of patents in the United States or any foreign countries, at said company's request, and shall assign said patents when issued, in due or proper form of law so as to transfer said patents, when issued, to said company; and this agreement shall apply to any and all inventions heretofore devised or constructed by said Flagge while in the employ of said company.

"The said Frank Flagge further agrees not to enter into any other employment during the term of this agreement or to devote any of his time or attention to any other business or to represent or work for any other firm or corporation.

"In case said Flagge shall devise anything of unusual merit, and of great benefit to the business of said company which is not now manufactured by said *Milwaukee Corrugating Company*, the said company agrees to give him a bonus therefor, the amount to be determined by Louis Kuehn and August Luedke, individually, according to their judgment of its value and utility.

"In witness whereof, the parties have duly executed this agreement this 16th day of November, 1917."

The testimony was very voluminous. Plaintiff sought to prove that this agreement was known to the *Kruegers* and that they conspired with Flagge and Smith to make use of the fruits of Flagge's labor while in plaintiff's employ.

The testimony showed that the connection of both Flagge and Smith with the defendant corporation was very unfortunate and that after a time they left the company, which resulted in much litigation between the company and Flagge.

The trial court found in favor of the plaintiff, and judgment against Flagge in a considerable amount was rendered for damages. From this judgment no appeal was taken.

The court also found that the *Kruegers* had knowledge of facts sufficient to put them upon inquiry concerning the former relations and contracts between Flagge and the plaintiff, and that the defendant company was liable for an accounting for profits made, and bound to make assignments with respect to certain patents obtained by Flagge.

The question on which the case is decided in this court renders it unnecessary to state in detail, or even in substance, the very large amount of testimony given at the trial which bore upon the matters above referred to.

Other facts will be stated in the opinion.

For the appellants there were briefs by *Minahan, Minahan, Minahan & Duquaine* of Green Bay, and oral argument by *Victor I. Minahan.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* and oral argument by *M. K. Whyte* and *Walter L. Gold,* all of Milwaukee.

The following opinion was filed April 8, 1924:

JONES, J. The main question of law involved is whether the agreement between Flagge and the plaintiff was a contract by plaintiff to employ Flagge for five years and by him to accept such employment, or whether it was an agreement for five years if Flagge continued in the employment

for that length of time without an agreement to stay for any specified time and without plaintiff agreeing to employ him for any specified time.

That agreement formed the basis of any right of action plaintiff might have against the *Northern Corrugating Company* and against the *Kruegers*. That this was so understood is shown by the fact that counsel for both parties presented very able and elaborate arguments on the subject.

This makes it necessary to briefly review the decisions of this court bearing on the question.

The first case on the subject is *Prentiss v. Ledyard,* 28 Wis. 131. In this case the plaintiff testified that the agreement was that he was to be paid at the rate of $900 per year. The defendant stated the contract to be as follows:

"After he [the plaintiff] had been in my employ some days or weeks, we had a conversation. I told him if he would serve me faithfully and would be strictly temperate, I would give him $700 per year; and after six months if he did not drink, and served me faithfully, I would give him $900 per year."

On this testimony it was held by the court that no definite time of service was agreed upon; that the agreement was merely that if the plaintiff continued in the employment, serving faithfully and keeping strictly temperate, he should receive for the first six months at the rate of $700 per year, and after six months at the rate of $900 per year, providing he did not drink and was faithful in the service; that either party was at liberty to terminate the service at any time, no definite period for which the service was to continue having been agreed upon.

In *Irish v. Dean,* 39 Wis. 562, the contract was not a hiring contract, but one to furnish milk to a hotel. In the opinion the court said (p. 568):

"In a contract for personal services, or for the sale of personal property to be delivered from time to time, if the contract is silent as to its duration, either party may termi-

nate it at pleasure by giving reasonable notice to the other party of his intention to terminate it."

In *Stubbe v. Waldeck,* 78 Wis. 437, 47 N. W. 833, the complaint was to the effect that the parties made an agreement whereby the plaintiff was to work for the defendant one year and was to receive $1,000 and $6 per day for expenses; that he was discharged without cause, to his damage. The answer denied that the employment was for one year, but alleged that plaintiff was to receive payment at the rate of $1,000 per year on conditions. The case was submitted to the jury on the facts. The evidence is not fully reported. The court held that there was evidence to support the verdict for the plaintiff.

In *Kellogg v. Citizens Ins. Co.* 94 Wis. 554, 69 N. W. 362, it was held:

"When one serves another under a contract for a year's service, and holds over, continuing in the service after the expiration of the year, there is a presumption, analogous to the presumption in the case of a yearly lease, that the parties consent to the continuance through another year of the contract of service." Page 557.

This was another case where the plaintiff was discharged, but the case turned on the question whether the finding that a contract was made for a year's service was warranted. The evidence showed that plaintiff had worked for a yearly salary for several years before the contract was made, and it was held that on this testimony the conclusion of the trial court that it was a contract for a year could not be disturbed. *Prentiss v. Ledyard,* 28 Wis. 131, was referred to, was not overruled, and was held to be not inconsistent with this conclusion.

In *Wright v. C. S. Graves L. Co.* 100 Wis. 269, 75 N. W. 100, there were two written contracts, made in February, 1894, by one of which plaintiff agreed to move to another county, keep a boarding house and hotel, to purchase of defendant land to be paid for in monthly payments at the

rate of $300 per year, and to perform such labor as might be required by the defendant. He was also to furnish a span of horses and vehicle for defendant. For these services defendant agreed to pay plaintiff $800 per annum, $500 cash, and $300 to be applied on a land contract. On the same day there was executed a land contract, the purchase price being $600, payable $300 and interest on April 1, 1895, and $300 and interest on April 1, 1896. In September, 1894, plaintiff was notified to quit the premises, and he accordingly vacated and brought his action to recover for one year's service. The court held that the two papers must be construed as one instrument, and that, so construing them, plaintiff became bound for at least two years' service.

In *Dickinson v. Norwegian Plow Co.* 101 Wis. 157, 76 N. W. 1108, the contract was based on two letters. In one the employee wrote: "I have thought the matter over carefully, and decided to accept your offer, at $1,500 per annum, to begin June 1st." The employer answered: "We will accept your offer to come June 1st, at a salary of $1,500 per annum."

In the opinion it was said: "Probably the letters . . . do not, as matter of law, establish that the hiring was for a year, although they are evidence from which such a hiring may be found."

But there was evidence that plaintiff was employed in the first place by the year; that he was employed for a year, and continued in the employment in that way and was credited with a year's salary at the end of each year. It was held that since the first year's work was done under a contract for an entire year and that the service was continued into the next year without any new arrangement, it would be presumed that both parties consented to the continuance of the service for another year.

In *Kosloski v. Kelly,* 122 Wis. 665, 100 N. W. 1037, it was held that an agreement to pay for future services at a certain rate per month is not as a matter of law a hiring

for the month, and the original case of *Prentiss v. Ledyard* was cited as authority.

In *Cronemillar v. Duluth-Superior M. Co.* 134 Wis. 248, 114 N. W. 432, the rule stated in *Kellogg v. Citizens Ins. Co., supra,* was restated, but there was testimony connecting the contract with a former one in which it was understood that either party might terminate the service at any time.

When we come to the decisions of the courts of other jurisdictions it would be a vain attempt to lay down any settled rule as to the effect of a hiring contract in which the time of duration is not stated. It is the English rule that a general or indefinite hiring is for a year. Blackstone said:

"If the hiring be general, without any particular time limited, the law construes it to be a hiring for a year, upon a principle of natural equity, that the servant shall serve, and the master maintain him, throughout all the revolutions of the respective seasons, as well when there is work to be done as when there is not." 1 Bl. Comm. 425.

Many English decisions will be found collected in 1 Labatt, Master & Servant (2d ed.) § 156.

But this was a rule far better adapted to English society and customs than to America and has never been adopted in this country. The American rule was thus stated by a writer who has long been considered high authority:

"In England it is held that a general hiring, or a hiring by the terms of which no time is fixed, is a hiring for a year. . . . With us the rule is inflexible, that a general or indefinite hiring is *prima facie* a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month, or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve. . . . A contract to pay one $2,500 a year for services is not a contract for a year, but a contract to pay at the rate of $2,500 a year for services actually rendered, and is determinable at will by either party. Thus it will be seen that the fact that the compensation is measured

at so much a day, month, or year does not necessarily make such hiring a hiring for a day, month, or year, but that in all such cases the contract may be put an end to by either party at any time, unless the time is fixed, and a recovery had, at the rate fixed for the services actually rendered." Wood, Master & Servant (2d ed.) sec. 136.

But many a battle between master and servant has appeared in the courts since the publication of this work, and no author would dare to lay down quite so confidently a general rule based on the decisions of the courts.

There is a large number of cases in which it is held that a hiring at so much per month or year is, in the absence of other facts, an indefinite hiring only, which may be terminated at the will of either party. On the other hand, there are many decisions holding that under such circumstances the hiring at a specified rate for a month or year constitutes a hiring for the period named. It would not be an easy matter to decide correctly on which side of the controversy the weight of authority preponderates.

In interpreting the contract we must be governed by its contents. There was no attempt to vary it by parol evidence, and it is such a contract as could not be varied by parol as to the intention of the parties. Hence, even if one or both the parties had some intention different from that expressed in the agreement, the contract as written must govern. It is equally true that in arriving at a conclusion we must consider the contract as a whole.

In construing the contract counsel for plaintiff place much reliance on the agreement that plaintiff will pay the sums specified per month for certain years. That payments are to be made per month for work done during several years does not necessarily imply that the contract must continue for several years. It was an agreement for future hiring at fixed sums per month, and in legal effect the contract is not different from those in many of the cases in which the courts have followed the rule declared in *Prentiss v. Ledyard,* 28 Wis. 131.

Much stress is also laid upon the use of the clauses "during said time" and "during said term" in the second and third paragraphs of the contract. It may be answered that the use of those clauses is quite as consistent with the view that it was intended to bind Flagge to do the things there stipulated during the time or term he was employed, whether long or short, as that it bound him for five years, in the absence of any such stipulation.

Counsel also rely for their construction on the language, "and for such other period after 1922 as the parties may mutually agree, unless terminated by the death of said Frank Flagge." Manifestly this was a formal clause binding no one. It added nothing to the agreement and we cannot give it much weight in the matter of construction.

There were three different contracts—one in 1910, one in 1912, and the final contract in 1917. In their general scope they do not materially differ. In the first one the contractual part began with the words, "the said company hereby employs;" in the last two contracts, with the words "the said company continues to employ." In the first contract the second paragraph closed with the words, "and for such other period after 1912 as the parties may mutually agree . . . unless terminated sooner by mutual consent of both parties" or by the death of said Frank Flagge. The last two contracts omitted the clause "unless terminated sooner by mutual consent of both parties."

Counsel for defendant attach some importance to this change, and argue that the first agreement was more indicative of an intent to have a definite time of service than the others. However this may be, it is certain that there were three agreements, the first of which was prepared by able counsel for the plaintiff. None of them was prepared by Flagge. They were so drawn as to very carefully protect the rights of the plaintiff and so secure for it all the fruits of Flagge's labor and energy during the time in which his services should continue.

It seems to us probable that if plaintiff had desired to

enter into an agreement binding on both parties for five years there would have been a specific and unequivocal stipulation to that effect.    And it is significant that, in an agreement so carefully drawn, the claim that there was a hiring contract for five years must be based on inference.

Plaintiff's officers knew that Flagge was eccentric, and the evidence shows that he was unreliable.    Plaintiff may have had good reason for employing Flagge and paying him liberally for valuable service to be rendered, but may have considered that for various reasons he might become an undesirable employee, without giving valid reasons for his discharge.    On the other hand, Flagge may have highly appreciated his own inventive skill and may not have been willing to mortgage his talent for five years.

Flagge testified that he was discharged.    Plaintiff claimed that he quit without cause.    It is evident that troubles arose. There were differences about pay.    The president of the company, testifying to a conversation with Flagge, said:

"I told him to show faith and finish that machine because in the last two years he has not done anything and that it has cost us a lot of money."

These were such differences as not infrequently arise between manufacturers and inventors in their employ.    We cannot say that it was not the intention of plaintiff to guard against such contingencies by omitting a specific term as to the duration of the service.

Whatever may have been the intentions of the parties, the contract is not specific as to the term of service, and it is not the duty of the court to so reform the contract as to add to it a term which the parties may have intentionally omitted. The rule was well stated by Mr. Justice Lyon in *Green Bay & M. C. Co. v. Hewett*, 55 Wis. 96, 103, 12 N. W. 382:

"The rule has been invoked that deeds and contracts should be construed in accordance with the intention of the parties to them.    But that is subject to this other rule, that if the instrument is free of ambiguity, such intention must

be ascertained from the language of the instrument itself. In such cases, as was tersely said by Lord DENMAN in *Rickman v. Carstairs,* 5 B. & Ad. 651, 663, 'the question is, not what was the intention of the parties, but what is the meaning of the words they have used.' Or, as was said with equal terseness by the late Mr. Justice PAINE in *Farmers' L. & T. Co. v. Commercial Bank,* 15 Wis. 424, 438, 'the sole duty of construction is to find out what was meant by the language of the instrument.' "

A rule for the construction of contracts which is applicable in this case is thus stated in 6 Ruling Case Law, 854:

"A written contract should, in case of doubt, be interpreted against the party who has drawn the contract. Sometimes the rule is stated to be that where doubt exists as to the construction of an instrument prepared by one party thereto, upon the faith of which the other has incurred an obligation, that construction will be adopted which will be favorable to the latter." See, also, 4 Page, Contracts (2d ed.) § 2054.

We shall not undertake to cite or discuss the many cases on this subject in other jurisdictions. They are in great conflict and cannot be reconciled. Many of them will be found collected and to some extent discussed in a note in 25 L. R. A. N. s. 529, and 1 Labatt, Master & Servant (2d ed.) §§ 156–159. In another note in 51 L. R. A. N. s. 629, the annotator says:

"The recent cases do not show such a conflict as appears in the former note. The tendency is apparently toward the rule that a hiring at so much per year, month, or week is, in absence of other circumstances controlling its duration, an indefinite hiring only, terminable at the will of either party."

It must be conceded that the decisions of this court are not entirely consistent with each other. In *Prentiss v. Ledyard,* 28 Wis. 131, it was declared to be the rule that an agreement to pay for future services at a certain rate per

year is not as a matter of law a hiring for a year.  We find the case cited in many decisions outside the state as authority.

It has never been overruled in this state, and in one of the latest decisions on the subject, *Kosloski v. Kelly,* 122 Wis. 665, 100 N. W. 1037, was relied on and followed.  In some of the other cases above referred to there are statements, without discussion, that evidence that wages were payable by the month or year would sustain a finding or verdict of definite hiring on appeal to this court.  In most of these cases, if not all, there were other circumstances to sustain the findings or verdict.

For reasons already stated, we see no reason for departing in this case from the rule as first declared by this court, and we hold that the contract was not one which bound the parties for the period of five years.

In a litigation between Flagge and the defendant company this contract was referred to by the latter in its counterclaim and stated to be one for a period of five years and not expiring until 1922.  It is argued by counsel for plaintiff that the defendant company is bound by this allegation.  The action was between different parties, and at most the statement can only be construed as an admission or opinion of the defendant company and its counsel at that time as to the legal effect of a contract between other parties.  It is in no manner binding on the court in respect to the proper construction of the agreement.

Plaintiff's counsel raise the point, without discussing it, that the defendant company cannot be heard to question the validity of the contract between plaintiff and Flagge, and cite *Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936.  In that case it was held that a third party, held to be a mere intermeddler, could not question the validity of a contract between other parties as to which there was perfect agreement between them and which was being executed.

In the instant case the relations between plaintiff and

Flagge had ceased a month before defendants had any negotiations with Flagge and he and plaintiff have been long engaged in litigation. The facts of the case cited and the instant case are so entirely different that we do not think that the rule laid down in the former decision is applicable.

There are two features of the case not in any way connected with the contract between plaintiff and Flagge. The court found that the defendant company had adopted the trade-name "Norcor" in imitation of the trade-name "Milcor" which had been long used by the plaintiff and that the defendant should be enjoined and restrained from using such trade-name.

There is no very close resemblance between the two names, and there may be some doubt whether the plaintiff would be entitled to enjoin the use of the name even if other essential facts were proven; but we base our decision on the fact that the plaintiff proved no injury to its business by the adoption by defendant company of such trade-name.

In order to entitle plaintiff to relief in actions of this kind it is necessary to prove that the plaintiff has suffered some injury, or that actual or probable deception or confusion on the part of plaintiff's customers by reason of defendant's conduct is shown. In this respect the testimony entirely fails. The only proof of any injury to the plaintiff or that any one was deceived by the use of the trade-name or that defendant palmed off its goods as those of the plaintiff was that on two or three occasions letters written to the defendant came to the plaintiff in envelopes addressed to the *Milwaukee Corrugating Company,* and we do not think that a foundation was laid for equitable relief. 26 Ruling Case Law, 877; 38 Cyc. 760; *Stumpf & Langhoff, Ltd. v. Espenhain D. G. Co.* 161 Wis. 582, 155 N. W. 120; *C. A. Briggs Co. v. National W. Co.* 215 Mass. 100, 102 N. E. 87; *Munn & Co. v. Americana Co.* 83 N. J. Eq. 309, 91 Atl. 87.

The court also found that the defendant company had

used advertising methods in violation of the rights of the plaintiff and that it should be enjoined from circulating catalogs imitating the cuts and advertising matter of the plaintiff. There was testimony that the defendant Smith, while associated with the defendant company, did appropriate advertising matter and cuts which had been used by the plaintiff and that some of them were used by the defendant company. This testimony was not disputed, and the finding of the trial court is sustained.

During the litigation between the appellant and Flagge in the Brown county circuit court, appellants in this action caused certain stock which was owned by Flagge to be impounded and held by the clerk of the circuit court in Brown county pending that litigation and afterward perfected their judgment against Flagge, in which it was adjudged that the stock be delivered by the court to the *Northern Corrugating Company* and that the certificate be canceled.

After judgment was recovered by plaintiff against Flagge in the circuit court for Milwaukee county, execution was issued against him on that judgment and this stock was levied on and sold to plaintiff. In the judgment now appealed from it was adjudged that the order impounding the stock and the judgment in the Brown county circuit court were of no force and effect as against the plaintiff, the *Milwaukee Corrugating Company,* and all claims of the appellant to the stock were subordinate to the lien of the plaintiff.

No direct attempt had been made by the plaintiff to have such judgment vacated or set aside. We shall not enter into discussion of the grounds on which the judgment in this respect is sought to be sustained. The judgment in Brown county was prior in point of time, and we do not think that its effect could be thus collaterally set aside.

The plaintiff filed notice of review and prayed for money damages against appellants on the ground that they had interfered with the execution of the contract between Flagge

and the plaintiff. The trial court disallowed this claim. From what precedes in this opinion. it is evident that this portion of the judgment must be affirmed.

The appellants filed in the Milwaukee circuit court a cross-complaint asking for judgment against Flagge and for substantially the same relief that had been asked in the action in the Brown county circuit court. This cross-complaint and all applications for relief were dismissed without costs and without prejudice to the rights, defenses, and equities of either of the parties in the suit then pending in the circuit court for Brown county. We are satisfied that this portion of the judgment should be affirmed.

*By the Court.*—So much of the judgment as enjoins the defendants *Krueger* and the *Northern Corrugating Company* from making use of or copying advertising matter issued by the plaintiff is affirmed; those portions of the judgment denying relief to plaintiff on its motion for review and denying the relief asked by appellants in their cross-complaint are also affirmed. Otherwise the judgment is reversed. The judgment is affirmed in part; reversed in part, and the cause is remanded for further proceedings in accordance with this opinion. Appellants are to recover costs.

DOERFLER, J., dissents.

A motion for a rehearing was denied, with $25 costs, on June 3, 1924.