KOSKEY, Appellant, vs. HARNISCHFEGER CORPORATION, Respondent.

*February 3—April 28, 1936.*

268

*Harold J. McGrath* of Milwaukee, for the appellant.

For the respondent there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Leo Mann* and *Arthur W. Coppin* of counsel, all of Milwaukee, and oral argument by *Mr. Mann.*

The following opinion was filed March 3, 1936:

MARTIN, J.    In July, 1931, appellant was in the employ of the Highway Trailer Company located at Edgerton, Wisconsin, under a contract providing for an annual salary of $7,200.    The contract was for one year starting June 20, 1930.    No change was made as to salary at the end of the first-year period.    However, appellant desired another connection, and was anxious to get located in Milwaukee. Through a friend, he learned that the respondent corporation might be in a position to use his services, and on July 6, 1931, he addressed a letter to the vice-president of the respondent corporation, in which he referred to the fact that he would like to relocate in Milwaukee, concluding the letter as follows:

"I trust at least that we can get together for an interview at a time most convenient to yourself at which time we can go more into detail on what I feel is possible and also lay before you my past record, references, etc."

To this letter, respondent replied: "Your letter of July 6 has had my attention and if you will call for an interview I shall be glad to talk to you. The most suitable time would be Friday afternoon."

Pursuant to this correspondence, two conferences were had at respondent's office between the appellant and Mr. E. R. Standfuss, vice-president of the respondent corporation. The first conference was had on July 10th, and the second on July 18, 1931. It appears that during these conferences Mr. Walter Harnischfeger, president of the respondent corporation, participated to some extent, and at both conferences the parties discussed many details respecting appellant's experience, qualifications, and the work to be done, etc. Appellant told of his then employment with the Highway Trailer Company, and produced the written contract covering his employment with that company. He requested employment by respondent at the same salary and a written contract for one year from the time he started work.

At the conclusion of the conference on July 10th, appellant was requested to return on July 18th for a further discussion of the proposed employment. In the conference on July 18th, Walter Harnischfeger, the president, and Mr. Standfuss, the vice-president, discussed with appellant matters which had been gone over in their first conference, but went more into detail; the conference lasting for several hours. During this conference, appellant stated that he would like to make a connection with the respondent corporation; that he believed his work would meet their expectations; and that, if he were employed, he wanted protection in the form of an agreement covering his employment for one year from the time he would start work. He further stated that he had worked under a contract in industrial engineering positions involving plant operation since 1924. The matter of the duration of his employment, his request

for a contract for one year from the time he would start work, and the rate of pay, were discussed.

Appellant testified that in this conference he produced the contract he had with the Highway Trailer Company, and that both Mr. Harnischfeger and Mr. Standfuss read it. It is claimed by appellant, and he so testified, that both Mr. Harnischfeger and Mr. Standfuss agreed to the feasibility of a contract for a year for such services as appellant intended to perform, and that they were both satisfied with the terms of the contract which appellant had with his then employer. He testified that Mr. Harnischfeger referred to a certain part of the contract and stated: "We don't want a complicated system here either. We want to cut out all the red tape possible. Otherwise it is all right." However, it is conceded that the conference ended without definitely fixing the amount of salary or the date for beginning work. In this regard appellant testified:

"We left the conference with the definite salary to be fixed rather vague, with this matter to be decided upon in the fall. The salary was not fixed, that was taken up in a later letter. . . . I was to go back to Edgerton and write them a letter. I was to think the thing over either on the basis of acceptance or nonacceptance."

On July 22d, appellant wrote respondent corporation; the material parts of his letter being as follows:

"In our conference of last Saturday no mention was made of references so I presume you are paying me the compliment of accepting me at my face value. I can, however, get the best of references from twenty or thirty nationally known executives. . . . I had many letters with me but did not offer them. . . . I believe I can safely say for myself, however, that I have as good a record for consistent and large profit increases on tough assignments as anyone else you can find. If you are also convinced of this fact then I do not believe *the salary question* should bother us. . . .

"I would certainly be pleased to settle down in Milwaukee and know that I could, by results, win myself a permanent

place in your organization and trust your final answer in this regard will be affirmative."

To this letter the respondent replied, under date of July 24, 1931; the material parts of the letter being as follows:

"I have given this subject a great deal of thought ever since you called on us and have weighed everything rather carefully pertaining to your application as well as those of some other men. . . .

"I believe that perhaps you would be suitable through past experience to fit into the picture. How valuable you can be to the corporation and how deeply and how permanently you can entrench yourself within the corporation, time would have to tell, but naturally your progress would depend entirely on your own self.

"It would take you some time before you would get fully acquainted with all the problems around here and it would be some time before the corporation could expect any returns from the investment to be made in your services, *and for that reason we feel that we cannot offer you the salary you ask for as a starting salary. However, we are willing to offer you as a starter a salary of $6,000 per annum. What comes after that would solely depend on yourself.*

"At the same time we feel that we have an unusual opening for a man who can visualize the possibilities ahead of him in that position. We do expect a rapid growth and expansion during coming years and the party affiliated in the capacity as you desire with our corporation can in due time become one of its most valuable members if he is broadminded enough to see the clear road ahead. . . .

"As stated previously, the opportunities that present themselves to a man in your station are most unusual in our plant and so are his duties. Our offer to you is made with an open mind and the clear responsibility of a management whose aim it is to forge ahead energetically and recognize its obligation to those who are in a great measure responsible for needful aid in the development of its chosen path.

"If you care to consider our offer after you have weighed carefully all angles of the *present and future possibilities,* we shall be glad to communicate with you further. If you feel that you would make a mistake in accepting the opportu-

nities in our organization just drop me a short note saying that you are not interested and we shall at your desire, consider the matter as closed."

To this letter the appellant replied under date of July 31, 1931; the material parts being as follows:

"*I made up my mind yesterday to accept your offer,* but I have been all day yesterday and most of today resigning. . . . For the last week or two have been turning over all affairs to a subordinate who will now handle all matters. I would like to give him most of next week and then go up to northern Minnesota for about a week and join you between the fifteenth and twentieth if this is agreeable to you. If you desire me sooner I will forego the trip north. While I am losing one hundred dollars a month salary I realize your position sufficiently not to argue about this matter. . . . I am of the belief that it will not take me long to get back to my present basis and exceed it while here it was the most I could hope for.

"As a basis of final agreement I would like to get some concessions from you, however, one being $100 toward moving expenses and the other the privilege of taking one week off on my own time if necessary in October or November. . . . As far as I am concerned the above are all the questions I have. The particular scope of my job and its ramifications I will leave to you—its ultimate scope will eventually depend on my ability anyway."

Respondent allowed the item of $100 toward appellant's moving expenses and notified him to report for work on September 1, 1931.

Between September 1, 1931, and April, 1932, appellant received the sum of $3,603.60 to apply on his salary. There was a shortage in his second check. He went to Standfuss and informed him that his check was not for the full amount and that he was working under a contract. Standfuss replied that this was only temporary, and that the matter would be rectified when operations were on a better basis. In January, 1932, appellant was notified of a further reduction

in his salary. He again called the matter to Standfuss' attention and objected, stating that his pay was not subject to cut because he had a contract. Appellant testified that Standfuss stated that he knew that, but the cut was not of his making, that he was not in sympathy with it, and suggested that the matter be taken up with the president, Mr. Harnischfeger. Appellant then conferred with Mr. Harnischfeger and told him that his salary was not subject to a cut as he had a contract. He claims that Mr. Harnischfeger stated that, in view of conditions, he should accept the cut, in as much as the corporation was one of the best places in Milwaukee to work, that it had a great future, and that any curtailment taken at that time would be more than made up as soon as the business was in condition to do so. He referred appellant back to Mr. Standfuss, who suggested that, in as much as everybody was taking a cut, as a matter of policy it would be wise for appellant to take a reduction with the others. He suggested that he accept $400 a month as a temporary basis.

On April 18, 1932, Mr. Standfuss left for a trip around the world, expecting not to return until the latter part of October. Before leaving, he directed appellant to devote most of his time to a certain program which it was assumed would take all of his time until Mr. Standfuss returned. The following morning Mr. Harnischfeger called appellant to his office, informed him that his work had been entirely satisfactory, but that the income and outgo of the corporation did not balance, that it would be necessary to make reductions in the organization, and discharged appellant. He offered appellant a check for $400, which he refused to accept. The following day the offer was again made, and appellant stated that he was starting a legal action. Following his discharge, appellant attempted to secure other employment, but was unable to do so, and remained unemployed for approximately fifteen months.

Upon the trial, appellant contended that his contract with respondent was partly in writing and partly in parol; that the written parts consisted of the letters and wires which had passed between the parties, and that the parol part consisted of the conversations had between the parties in their conferences while the contract was being negotiated. Appellant testified with reference to those portions of the contract which he claimed are in parol for the purpose of explaining the intention and understanding of the parties with reference to the writings. This testimony was objected to on the ground that it attempted to vary the terms of a written contract. The trial court allowed it to come in subject to the objections and permitted the respondent to offer testimony on the same subjects. At the conclusion of the trial, on defendant's motion, the court struck out all of such testimony and directed a verdict in favor of the defendant, holding as a matter of law that there is no ambiguity in the correspondence, and that it constitutes a contract of employment for an indefinite term at a fixed salary, and that under such contract it was terminable at the will of either party.

The rule in Wisconsin is that a hiring at some specified amount per month or year is, in the absence of other facts, an indefinite hiring only, which may be terminated at the will of either party. *Brooks v. National Equipment Corp.* 209 Wis. 198, 200, 244 N. W. 598; *Milwaukee Corrugating Co. v. Krueger,* 184 Wis. 139, 198 N. W. 394; *Kosloski v. Kelly,* 122 Wis. 665, 100 N. W. 1037; *Dickinson v. Norwegian Plow Co.* 101 Wis. 157, 76 N. W. 1108; *Prentiss v. Ledyard,* 28 Wis. 131. In *Brooks v. National Equipment Corp., supra,* the case came to this court on appeal from an order sustaining a demurrer to the complaint on the ground that the facts alleged did not state a cause of action. The complaint alleged that the employment was arranged by correspondence, which, so far as material, was to the following effect: Defendant offered plaintiff "the position of gen-

eral sales manager at a salary of $15,000 per year to begin with, and future increase in salary, or any arrangements for additional remuneration, will depend upon the efficiency and the manner in which the sales department is conducted under your direction." Plaintiff replied, requesting some officership, and "a chance on increasing my income if you will provide some basis—such as a bonus on increased sales or profits over the normal;" and inquired, "How would December 1 suit you as a time to start?" Next defendant inquired whether plaintiff "will take the position at $15,000 per year." It further appeared from the complaint that plaintiff accepted the offer, moved his family from New York to Milwaukee, and entered defendant's employment on November 1, 1929. What the court here held is that on the facts as they were alleged in the complaint it failed to show a hiring for a definite period. The court stated:

"In the absence of other facts, it constituted an indefinite hiring only."

In *Dickinson v. Norwegian Plow Co., supra,* the evidence showed that in the fall of 1888 the plaintiff had a conversation with one Mitchell, the secretary and general manager of the defendant corporation, with regard to entering the employment of the defendant for a year at the rate of $1,500. No contract was, however, made at the time, but on the 6th day of May, 1889, the plaintiff, in reply to an inquiry from the defendant as to whether he was still at liberty to enter defendant's employ, sent the defendant the following letter:

". . . I have thought the matter over carefully, and decided to accept your offer, at $1,500 per annum, to begin June 1. Nothing was said on the subject of a vacation, but it is to be understood, I suppose, that, if desirable, one can be had at a suitable time of the year."

To this, defendant replied by letter: "We will accept your offer to come June 1st at a salary of $1,500 per annum. We hope the work and place will prove satisfactory to both parties."

Plaintiff commenced to work for defendant under a contract made by these letters, on June 1, 1889, and continued so to work until June 1, 1895, with no new agreement. He was paid at the rate of $1,500 up to October 1, 1894, at which time defendant's directors voted to reduce his salary to $1,200 per year. Plaintiff refused to accept the reduction, and insisted that his salary could not be reduced prior to June 1, 1895. He kept on at work under this claim, but, when he was settled with on June 1, 1895, defendant refused to pay him at the rate of $1,500 per year after October 1, 1894, but paid him at the rate of $1,200 per year, thus leaving $200 unpaid, if in fact the plaintiff was employed for the entire year. The jury returned a verdict against the plaintiff. Judgment was entered dismissing the complaint. Plaintiff appealed. The case was before this court upon appeal from a judgment of nonsuit in 96 Wis. 376, 71 N. W. 606. Upon that appeal it was held there was sufficient evidence to require submission to the jury of the question whether plaintiff's employment was for the entire year ending June 1, 1895. The court, in 101 Wis. 157, 76 N. W. 1108, speaking through Mr. Justice WINSLOW, said:

"The case has been tried again, and the evidence on both sides is preserved in the bill of exceptions. From this evidence now before us there can be no doubt that the plaintiff's employment was understood on both sides to be an employment for an entire year when he went to work for the defendant June 1, 1889. *Probably the letters of May 6 and 11, set forth in the statement of facts, do not, as a matter of law, establish that the hiring was for a year, although they are evidence from which such a hiring may be found."*

In the instant case, it is not necessary to pass upon the question of whether the correspondence between the parties, standing alone, was sufficient to take the case to the jury, because we are satisfied that the trial court erred in striking from the record the parol evidence which was offered on both sides explaining the language in the correspondence.

In *Wheelwright v. Pure Milk Asso.* 208 Wis. 40, 46, 240 N. W. 769, 242 N. W. 486, the court said:

"It is probably accurate to say that the language of a contract is ambiguous, within the meaning of these authorities, when it may reasonably be taken in more than one sense. In other words, the language must have some stretch in order to authorize the admission of parol evidence without violating the rule against contradicting a writing by parol. For the same reason the parol evidence must establish a sense or meaning which the language of the contract will reasonably bear. . . . 'But it must be borne in mind that it is not the business of construction to look outside of the instrument to get at the intention of the parties, and then carry out that intention whether the instrument contains language sufficient to express it or not; but the sole duty of construction is, to find out what was meant by the language of the instrument. And this language must be sufficient, when looked at in the light of such facts as this court is entitled to consider, to sustain whatever effect is given to the instrument.' "

"The rule in Wisconsin with respect to the admissibility of parol evidence for the purposes of interpretation has been set forth in numerous cases. If the contract is ambiguous, evidence of the surrounding circumstances, practical construction by the parties, and even the declarations of the parties constituting the negotiations may be resorted to in aid of construction. *Firestone Tire & Rubber Co. v. Werner,* 204 Wis. 306, 236 N. W. 118, and cases cited." *Wheelwright v. Pure Milk Asso., supra,* at page 44.

If the contract is clear and unambiguous, such evidence must be excluded. *John O'Brien Lumber Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *Schuhknecht v. Robers,* 192 Wis. 275, 212 N. W. 657; *Zohrlaut v. Mengelberg,* 144 Wis. 564, 124 N. W. 247, 252, 128 N. W. 975.

In *Zohrlaut v. Mengelberg, supra,* the court said:

"Where there is no ambiguity in the contract, either in its literal sense, or when it is applied to the subject thereof, it must speak for itself entirely unaided by extrinsic matters. Where such ambiguity does exist, then evidence of the circumstances under which the contract was made is proper to

enable the court in the light thereof to read the instrument in the sense the parties intended, if that can be done without violence to the rules of language or of law. *Johnson v. Pugh,* 110 Wis. 167, 170, 85 N. W. 641."

Appellant testified that, during the negotiations with the president and vice-president of the respondent corporation, he insisted upon having a contract for one year. He produced the written contract with his then employer, which was for a definite period of one year with a salary of $7,200 per annum. He further testified that both Mr. Harnischfeger and Mr. Standfuss agreed on the advisability of a definite employment for one year, and expressed their satisfaction with his contract with the Highway Trailer Company, with a single exception which related neither to salary nor period of employment.

Appellant testified that, when there was a shortage in his second pay check, which was for the month of October, 1931, he notified respondent that his salary could not be reduced as he had a definite contract for one year at a fixed salary. Upon the trial, neither Mr. Harnischfeger nor Mr. Standfuss denied this testimony. Appellant further testified that, when about to leave for a trip around the world in April, 1932, Mr. Standfuss outlined a program for appellant's attention, which would occupy his time until October when Mr. Standfuss expected to return. There is no denial of this fact.

We are of the opinion that respondent's offer as contained in its letter of July 24, 1931, to appellant, is ambiguous and may be taken in more than one sense; that the parol evidence which was offered upon the trial should not have been stricken, and that such evidence and the letters themselves made an issue for the jury.

*By the Court.*—Judgment reversed. Record remanded, with instructions to enter an order granting a new trial.

A motion for a rehearing was denied, with $25 costs, on April 28, 1936.