KOVACHIK, Respondent, v. AMERICAN AUTOMOBILE ASSO-CIATION, Appellant.

*September 12—October 7, 1958.*

For the appellant there was a brief by *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondent there was a brief by *Robert E. Newman* and *Lawrence S. Ruetz,* both of Kenosha, and oral argument by *Mr. Newman.*

WINGERT, J.   We construe the contract of employment as terminable at will, without cause, on three days' written notice.  Therefore its termination on such notice gave rise to no cause of action for damages, plaintiff having been paid all commissions earned by him.  Accordingly, the judgment must be reversed and the complaint dismissed.

1. This court has long been committed to the proposition that a hiring at some specified amount per week, per month, or per year will be construed as a contract for an indefinite hiring only, which may be terminated at the will of either party, in the absence of facts or contractual provisions showing a contrary intent.  *Milwaukee Corrugating Co. v. Krueger,* 184 Wis. 139, 144–152, 198 N. W. 394; *Brooks v. National Equipment Corp.* 209 Wis. 198, 200, 244 N. W. 598; *Nelson v. La Crosse Trailer Corp.* 254 Wis. 414, 417, 37 N. W. (2d) 63.  The same is true, *a fortiori,* of a contract such as the present one, where the compensation takes the form of commissions based on money collected rather than on a specified period of time.

2. Turning to the contract, it not only contains nothing to show an intention to permit termination only for cause, but on the contrary we think it affirmatively authorizes termination at will on three days' notice.  Following is the pertinent provision:

"Both parties agree that this agreement shall cease immediately upon breach of any of its conditions and may be canceled by either party upon three (3) days' written notice.  Notice of cancellation may be delivered personally or mailed

to the last home address given by representative to the club, and this agreement shall be canceled three (3) days after the mailing of the above-mentioned notice."

The first sentence quoted deals with two different situations, and provides (1) that the contract *shall* terminate *immediately* on breach, and also provides, separately, (2) that it *may* be terminated by either party on three days' written notice. If, as contended by appellant, the provision for cancellation on notice applies only in case of breach, the preceding provision for immediate cessation upon breach would be surplusage. Other things being equal, a construction which gives effect to every word of the contract should be preferred to one which results in surplusage. *Knuth v. Fidelity & Casualty Co.* 275 Wis. 603, 607, 83 N. W. (2d) 126. The cancellation provision cannot be construed as only establishing procedure for effectuating the immediate termination specified to occur on breach, for it says that *either* party may cancel on three days' notice, whereas normally on breach only the wronged party may terminate.

Our interpretation is fortified by the fact that respondent's contrary construction could make the contract binding on both parties for the duration of the plaintiff's working life or defendant's operating existence, in the absence of breach. It is most unlikely that either party intended to be bound for a period of such potential length.

We consider the terms of the contract so clear that there is no occasion to apply the rule that ambiguities in a contract are to be construed against the party by or for whom it was drafted.

3. There is no evidence in the record of extrinsic facts showing that the parties intended to make a contract terminable only for cause. Appellant argues that the statement in the club's letter giving him notice of termination, that his refusal to discontinue his outside automobile insurance activities made the termination necessary, shows that defend-

ant believed the contract to be terminable only for cause. We cannot interpret it as anything but a courteous and natural statement of the reason for exercising an undoubted right to terminate at will. Were it otherwise, a letter of that sort written by one party six years after making the contract could hardly qualify as persuasive evidence of a mutual understanding on the earlier date contrary to that set forth in the written instrument.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.

MARTIN, C. J., and CURRIE, J., took no part.

STATE, Plaintiff in Error, v. SUTTER, Defendant in Error.

*September 12—October 7, 1958.*

For the plaintiff in error there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

No brief filed and no appearance for the defendant in error.

FAIRCHILD, J.    Defendant was convicted of violating sec. 939.32 (1), Stats., by attempting to violate sec. 944.01 (1). Sec. 959.15, sometimes referred to as the sex-deviate law, provides in part:

"(1) If a person is convicted under . . . section 939.32 for attempting to violate section 944.01 . . . the court shall commit him to the state department of public welfare for a presentence social, physical, and mental examination." The municipal court inadvertently failed to comply with this statute in the case before us and ordered a presentence investigation which did not include physical and mental examination, committing defendant, meanwhile, to the custody of the sheriff. That this statutory provision is mandatory is clear. Several offenses are specified, and where they are involved, the word "shall" is used. Immediately following is a provision relating to sex crimes other than those specified. As to the unspecified sex crimes, the word "may" is used and the court's power to commit a defendant for examination is further conditioned upon the adequacy of facilities and the willingness of the department to accept him.

The statute further provides that upon completion of the examination a report of the results and the recommendation of the department shall be sent to the court. The court's authority at that point depends upon whether the department recommends specialized treatment for the defendant's mental and physical aberrations. If it does so recommend, the court must either place him on probation, upon condition that he receive treatment, or commit him to the department. If there is no recommendation for treatment, the court is to proceed to sentence defendant in the manner provided by law. Clearly, the legislature has authorized the department, not the court, to determine whether the defendant's offense is to have the consequences of a crime in the traditional sense or is the manifestation of physical or mental aberration for which defendant should be treated. If the offense is, in fact, the latter, then it is in the interest both of society and the defendant that defendant receive treatment and that any restrictions imposed upon liberty should not be imposed for

the purpose of punishment. *State ex rel. Volden v. Haas* (1953), 264 Wis. 127, 131, 58 N. W. (2d) 577.