Borg-Warner Corporation, Appellant, v. Ostertag, Respondent.

*November 29, 1962—January 8, 1963.*

For the appellant there were briefs by *Horwitz & Regner* of Oshkosh, and oral argument by *Simon Horwitz.*

For the respondent there was a brief and oral argument by *David K. Allen* of Oshkosh.

FAIRCHILD, J.   1. *Nonacceptance of the new bonus terms.* The circuit court found that Ostertag did not agree to the terms proposed November 1st.  If he had so agreed, he could recover nothing on his counterclaim.  His total sales from

July 1, 1957, to February 20, 1958, did not exceed the new quota. As will be seen, if he had agreed to the new quota, he would not be entitled to prorate it because his resignation was voluntary.

Thus the first question is whether this finding of the circuit court is against the great weight and clear preponderance of the evidence. There is no evidence of any express assent to the new bonus terms for the year which had begun July 1, 1957. It is Borg-Warner's position that Ostertag's continuing to render service for almost four months, and his acceptance of salary payments increased by $50 per month compel a finding that assent was given, though by implication from conduct. Borg-Warner considers that Ostertag withdrew his objection to the new terms by continuing to work.

If the benefit silently accepted by Ostertag had been more substantial, the argument that he must be deemed to have accepted the new bonus terms would be more persuasive. The increase in monthly salary, however, would produce $400 up to the next July 1st. This advantage is slight when compared with the disadvantage which appears to be involved in the new bonus terms. During the previous year his salary had been $7,200 and his bonus (at four percent of sales in excess of $269,680) $10,898, or total earnings of $18,098. Under the new terms, Ostertag could not earn as much as the year before no matter what volume sales reached. His greatest possible earning would be twice his salary ($15,200) and he would need total sales of approximately $730,000 to reach that.

It may well be that it did not require much sales effort to approach in one year the volume of sales made the preceding year, and the parties may well have anticipated an increase in quota. We do not presume to say that the new terms were unfair, but it is not unreasonable under these circumstances that Ostertag should consider that they were not the satisfactory terms he had been promised, nor is it unreasonable to

believe that the employer was aware of his continued dissatisfaction.

The finding of the circuit court that Ostertag did not agree to the new bonus terms is not against the great weight and clear preponderance of the evidence.

2. *The contract of employment.* The result reached in the circuit court was based on the following analysis: Ostertag was hired by the year, *i.e.*, each party was obligated for a full year at a time. The bonus terms which applied to the first year (1955–1956) were replaced by other terms agreed upon for the second year (1956–1957). The employment continued into the third year (1957–1958) without a new agreement on terms. There is a presumption that under such circumstances the terms for the second year were renewed for the third.[1] The employer's unilateral change of the terms on November 1st was a breach. The employee's quitting on February 20th was justified thereby and he was entitled to an aliquot portion of his bonus. The bonus for the portion of the year worked was computed by prorating the quota over seven and two-thirds' months. Because under this analysis the employee was working under the 1956–1957 terms, he was not entitled to retain the increase in salary and the amount which he received by reason of the increase was offset against the bonus to which he was entitled.

Where an employee is hired without any specific provision for tenure or termination, the question may arise whether the relationship is terminable at will or is for successive periods until terminated at the end of a period. This court has treated the question as one of fact and has sustained findings that the hiring is for successive months or years where the agreed

---

[1] *Kellogg v. Citizens Ins. Co.* (1896), 94 Wis. 554, 69 N. W. 362; *Dickinson v. Norwegian Plow Co.* (1898), 101 Wis. 157, 76 N. W. 1108; *Appleton Waterworks Co. v. Appleton* (1907), 132 Wis. 563, 113 N. W. 44; *Cronemillar v. Duluth-Superior Milling Co.* (1908), 134 Wis. 248, 114 N. W. 432; and *Milwaukee Corrugating Co. v. Krueger* (1924), 184 Wis. 139, 198 N. W. 394.

compensation has been stated at a certain rate per month or per year.[2] It has also been said that an agreement to pay for services at a certain rate per year is not as a matter of law a hiring for a year.[3] Ostertag was originally employed at a rate per month plus a bonus to be computed on the basis of sales for a specified year and paid after the end of the year. As will be noted, however, it is unnecessary to determine whether in each of the first two years the parties were obligated for a full year.

Where an employee is hired by the year and continues in employment after the end of a particular year, there is a presumption that he is again employed for the new year on the same terms as before.[4] The learned circuit judge relied on this presumption. We think however that if the contracts in the first and second years were each for a full year, the presumption that there was a contract in the third year for a full year's employment has been fully rebutted. In the first place, the computation of bonus in each of the first two years was based on sales for a year particularly specified. The quota agreed to for the second year was larger than the first, and Ostertag's objection to the last proposal was not that the quota was larger but that a limitation had been imposed. In the second place, Ostertag testified that he had repeatedly asked about a new contract for 1957–1958 and was assured there would be one. In the third place, the employer felt free to fix the terms by unilateral action. It seems clear that neither party considered himself bound for the full year in the absence of a new agreement. It appears that at most the old terms of employment were to continue until the parties reached a new agreement, or found they could not agree.

[2] *Kellogg v. Citizens Ins. Co., supra,* footnote 1; *Dickinson v. Norwegian Plow Co., supra,* footnote 1; and *Cronemillar v. Duluth-Superior Milling Co., supra,* footnote 1.

[3] *Milwaukee Corrugating Co. v. Krueger, supra,* p. 152, footnote 1.

[4] *Kellogg v. Citizens Ins. Co., supra,* footnote 1; and *Dickinson v. Norwegian Plow Co., supra,* footnote 1.

Thus we conclude that whether or not in the first two years each party was obligated for the entire year, neither party ever became obligated for the entire third year. We think that with respect to services rendered after July 1, 1957, and prior to the announcement by the employer of the terms on November 1st, the previous rate of salary and the previous bonus formula continued to be applicable, and the employment relationship was terminable at will except that if terminated by the employer without fault of the employee a bonus proportionate to the amount of time worked must be paid.[5]

The reasonable manner in which to compute the bonus for part of the year is to prorate the quota over the period involved and apply the formula to sales during that period in excess of the prorated quota. There is no indication that the volume of sales fluctuated seasonally.

The employer's unilateral designation of new terms not agreed to by the employee was a termination by the employer without fault of the employee as of November 1st. Prorating the 1956–1957 quota as above stated, the quota for the four-month period up to November 1st would be one third of $269,680, or $89,893. Ostertag was entitled to a bonus of four percent of the amount by which orders received and accepted during this period exceeded the prorated quota.

Accepting the finding that Ostertag did not agree to the new bonus terms for 1957–1958, the employer cannot claim that it paid the increased salary in reliance upon the acceptance of the new bonus terms and the employer is not entitled to offset the amount of the increased salary beginning November 1st against the bonus allowed for the four months before November 1st. We are unable to determine from the record the total amount of orders received and accepted during the four months and this fact will have to be determined by the circuit court.

---

[5] See 35 Am. Jur., Master and Servant, p. 511, sec. 80, and *Zwolanek v. Baker Mfg. Co.* (1912), 150 Wis. 517, 137 N. W. 769.

3. *The amount due plaintiff for advances not repaid.* The circuit court made brief reference in its memorandum decision to the $720.71 for which plaintiff originally brought action but did not refer to this matter in the findings. We think that it cannot be disregarded. A statement of the account showing this balance is in evidence. No proof was offered of the items making up the account. It is clear, however, from a stipulation and other statements of counsel that no question was raised about its validity, and that if Ostertag were not entitled to recover any bonus, Borg-Warner would be entitled to judgment for $720.71. There was nothing to indicate that the validity of the items in the account was dependent upon the resolution of the other issues. It necessarily follows from the stipulations made that if, as now decided, Ostertag is entitled to recover a bonus, the $720.71 must be allowed in favor of Borg-Warner as an offset to the amount awarded Ostertag.

*By the Court.*—Judgment reversed. Cause remanded for determination of the net amount due defendant in accordance with the opinion and for entry of judgment accordingly.

BROWN, C. J. (*dissenting*). I am not able to join in the opinion in which the majority of my brethren concur.

Mr. Ostertag had been employed by the year, with each year commencing July 1st. It had been the practice for the compensation for a subsequent year to be determined sometime after July 1st; compensation for 1956–1957 was determined at the end of August, 1956. No arrangement had been made by July 1, 1957, for the year then commencing. Ostertag made frequent inquiries thereafter but was told that his compensation had not yet been determined. On November 1, 1957, by letter, his employer informed him of the terms of his 1957–1958 employment. These gave him an increase of $50 in monthly salary but decreased his year-end bonus.

Ostertag was dissatisfied and complained but he did not quit or give notice he would quit. Instead he continued until February 20, 1958, to do his usual job and accepted increased responsibilities, and he collected the increased monthly pay together with commissions applicable to his next year-end bonus. Then he left plaintiff company for other employment. He admits that upon doing so he agreed to repay to the plaintiff a $720.71 overdraft, which plaintiff had demanded. While defendant admits this, he testified that he never intended to keep the promise but made it only in order to keep the appellant from bothering him about it. The $720.71 is the overpayment alleged by plaintiff on commissions to which Ostertag would have been entitled by sales already made by him, according to the November 1, 1957, letter, if Ostertag had completed the 1957–1958 year, but to which plaintiff claims defendant was not entitled when the latter quit in midyear.

I consider that by continuing to work without reservation and by taking the compensation stated in the November 1, 1957, offer, Ostertag accepted that offer and thereby a contract between the parties came into existence according to which contract the issues must be resolved.

In my opinion, the judgment should be reversed, judgment entered in favor of plaintiff on its complaint, and defendant's counterclaim dismissed.

I am authorized to state that Mr. Justice CURRIE and Mr. Justice GORDON join in this opinion.