CLARKE FLOOR MACHINE COMPANY, Appellant, v. DE VERE CHEMICAL COMPANY, Respondent.

*February 3—March 8, 1960.*

For the appellant there was a brief by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs*.

For the respondent there was a brief by *Hansen & Eggers* of Beloit, and oral argument by *Larry J. Eggers* and *Leo H. Hansen*.

MARTIN, C. J. Plaintiff is a Michigan corporation with its factory at Muskegon. It manufactures floor sanders,

scrubbing machines, polishers, and vacuum cleaners. It appears that both prior to and during the time involved in this case plaintiff sold its machines to a dealer in Beloit, the C. Z. Chemical Company.

Defendant is located at Janesville, Wisconsin. It manufactures certain products for sanitary maintenance and also acts as jobber for sanatorium accessories and supplies. E. D. Dawald is its president. In 1955 defendant made arrangements with Ray Parsons, district distributor for the plaintiff, whereby the defendant purchased Clarke machines for resale.

About March 8, 1956, Dawald received a letter from Parsons canceling defendant's distributorship of Clarke machines because:

"It seems as though several years ago I gave C & Z Chemical Co. a written agreement that I would not establish any new distributors in Rock county. Of course I had forgotten about this when I agreed to go along with you."

Upon receipt of the letter Dawald called Parsons, who suggested that they meet with other representatives of the Clarke organization at the National Sanitary Supply Association show to be held in Chicago. In April, Dawald, Parsons, and Hal Croskey, sales manager of the plaintiff company, met in Chicago. Dawald testified that at said meeting he was asked whether he knew if the C. Z. Chemical Company handled other machines than Clarke and he said that to his knowledge it handled at least two other lines, and "Mr. Croskey told me we would have a line—the Clarke line. He turned to Mr. Parsons and advised Mr. Parsons to in turn advise C. Z. Chemical Company they were no longer the distributors." Dawald understood from their conversation that the distributorship would begin immediately. Parsons told him he was happy to clarify the matter and that they could work together.

Thereafter Dawald received the following letter dated May 14, 1956:

"I wish to confirm understanding reached verbally at the N.S.S.A. show wherein you will be set up as our distributor in Rock county to the exclusion of other distributors. Mr. Parsons will contact you further and confirm the arrangements. (I may be mistaken about that county.)

> "Cordially,
> "Clarke Sanding Machine Company
> "Hal Croskey (signed)
> "Sales Manager."

After receipt of this letter the defendant again purchased Clarke machines, the total purchased for the period May 12, 1956, to February, 1958, being about $2,500.

Dawald testified that in June or July of 1956 when Parsons called on the defendant, he asked Parsons why one of the local hardware stores was allowed to have a Clarke machine in its window, assuming it was for sale, and Parsons advised him the plaintiff supplied the heavy machines to certain stores for rental purposes, but not for sale.

One Frank Johnson, manager of the Janesville Sherwin-Williams branch store, testified that in October of 1957 he had a chance to sell an industrial-type vacuum cleaner; that he tried to purchase one from the branch distributor of Clarke in Milwaukee and was advised that De Vere Chemical Company was the distributor in his area and he would have to contact De Vere. He did so and purchased the machine from the defendant.

The only witness for the plaintiff was Ray Parsons, who testified that Dawald had not asked for an exclusive dealership; that he did not set up the defendant company as an exclusive distributorship; that Dawald knew Parsons

was selling machines to other distributors in Rock county and did not complain about it.

Since the testimony of Dawald and Parsons was in conflict on most points, the determination of the issues involved depended upon the credibility of the witnesses and this is the province of the trial court. *Adolph Coors Co. v. Pursel* (1947), 250 Wis. 174, 26 N. W. (2d) 550. Croskey's letter to Dawald of May 14, 1956, also supports the trial court's conclusion that defendant had an exclusive distributorship.

Plaintiff contends there is no evidence as to the commissions agreed upon. Dawald and Parsons both testified that defendant was to receive a discount of 40 per cent on the machines it purchased. The finding that defendant was to receive a commission of 10 per cent on sales to other distributors in Rock county was based upon Dawald's testimony that on the Sherwin-Williams sale, which was treated as a sale to a "subdistributor," the defendant had given a 30 per cent discount; that Parsons, in discussing the matter with Dawald, had told him he should have given a subdiscount of only 25 per cent.

Plaintiff complains that there is nothing in the record upon which the court could base its determination of damages to the defendant in amount of $842.89. The record shows, however, that the court's determination was based on a stipulation as to sales made to other distributors during the period in question.

It is also contended by plaintiff that there is no evidence as to when the agreement was to begin or end. May 14, 1956, is the date of Croskey's letter to Dawald. It is a confirmation of the understanding reached verbally in Chicago, a confirmation upon which the defendant proceeded to order and sell the Clarke machines. The agency was terminable at will at any time by either party; and

it was in fact terminated early in February of 1958 when plaintiff refused to ship a machine sold by the defendant to the Beloit public schools.

Plaintiff contends that the agreement is void for want of mutuality. We cannot agree. This court has frequently held that even where there is not promise for promise in an agreement between principal and agent, the agent's efforts in pursuance of the agreement may be sufficient to give the contract mutuality.

In *Graham v. Lamp* (1921), 174 Wis. 373, 376, 183 N. W. 150, where this court considered the argument in connection with a written broker's contract, it was said:

"We have here promise for promise. But even if we did not have such promise expressed it would not be void for want of mutuality or for lack of a consideration where the broker makes a *bona fide* effort to sell. *Greene v. Minn B. Co.* 170 Wis. 597, 176 N. W. 239."

Likewise, in *Arnold v. National Bank of Waupaca* (1905), 126 Wis. 362, 365, 105 N. W. 828:

"The immediate performance of work by the plaintiffs in pursuance of such employment being at once brought to the knowledge of the defendant was undoubtedly an acceptance, and created mutuality to such contract."

See also 1 Corbin, Contracts, p. 505, sec. 154.

Here the defendant, immediately after receiving the letter of confirmation from Croskey, ordered and sold the Clarke machines, purchasing some $2,500 worth of plaintiff's products from May, 1956, until February, 1958.

Finally, it is plaintiff's contention that the agency agreement is void under the statute of frauds, sec. 241.02 (1), which requires that every agreement that by its terms is not to be performed within one year shall be void unless in writing.

In 2 Corbin, Contracts, p. 552, sec. 446, it is said:

"Contracts for employment or other performance that is to begin within a year and is to continue for an indefinite, unspecified period are terminable by either party at any time and are held not to be within the one-year clause of the statute."

In *Kinzfogl v. Greiner* (1953), 265 Wis. 105, 60 N. W. (2d) 741, where there was an oral agreement between a manufacturer and a salesman which provided for increased commissions after five years and the employment was for an indefinite period, it was held that the contract, because terminable at will, was not void under the statute of frauds.

"A contract for hire for an indefinite term is a valid contract although not in writing." *Kirkpatrick v. Jackson* (1949), 256 Wis. 208, 212, 40 N. W. (2d) 372.

*By the Court.*—Judgment affirmed.