Morris E. Spector, J.
On January 24,1951 the plaintiff (the creator of the cartoon panel entitled “ Dennis The Menace ”) and the defendant, then known as the Post-Hall Syndicate, Inc., *694 entered into an agreement for the syndication by Hall of the cartoon panels.
The contract provided that the panels were to be delivered to Hall’s office in the City of New York at least six weeks prior to the scheduled date or release.
The agreement further provided that its duration should be for the period of one year with automatic renewals from year to year without notice unless the plaintiff’s share from syndication did not equal certain minimum stipulated weekly payments, in which event either party had the right to terminate it.
There is no claim that the minimum returns have not been met. In fact, the evidence is quite to the contrary, and it is uncontradicted that the payments are now over five times the required minimum.
The parties performed under the contract from the date thereof until December 18,1961 when the plaintiff wrote a letter to the defendant in which he purported to cancel and terminate the contract as of March 11,1962. However, the plaintiff is still performing under the contract by reason of the provision in the aforesaid letter of December 18, 1961, that if the cancellation were not recognized then the plaintiff would continue to perform until such right of cancellation and termination should be established by litigation.
In answer to the plaintiff’s letter, on March 8, 1962, the defendant advised the plaintiff that by reason of the payment of the minimum provided by the terms of the contract that it would deem the contract renewed for the further period of one year and that it would also deem it renewed from year to year thereafter provided the stipulated payments had been made.
The plaintiff’s complaint seeks a declaratory judgment determining whether the plaintiff has the legal right to terminate the contract on the grounds (a) that it is for an indefinite term and that there is no mutuality; (b) that section 2855 of the Labor Code of the State of California provides that such a contract may not be enforced beyond seven years from the commencement of the services; and (c) that if the contract is governed by the laws of the State of California it may be cancelled and terminated since it is no longer enforcible under the aforesaid section of the Labor Code.
The questions of law are clearly defined and are (1) is the contract governed by the laws of the State of New York or of the State of California; (2) if the contract is governed by the laws of California, is it terminable by reason of section 2855 of the Labor Code; and (S) is the contract, which calls for automatic *695 renewals upon the payment of certain mínimums, voidable either by reason of indefiniteness or lack of mutuality.
The California statute (Labor Code, § 2855) provides as follows: “ § 2855. Enforcement of contract to render personal service; time limit. A contract to render personal service, other than a contract of apprenticeship as provided in Chapter 4 of this division, may not be enforced against the employee beyond seven years from the commencement of service under it. Any contract, otherwise valid, to perform or render service of a special, unique, unusual, extraordinary, or intellectual character, which gives it peculiar value and the loss of which can not be reasonably or adequately compensated in damages in an action at law, may nevertheless be enforced against the person contracting to render such service, for a term not to exceed seven years from the commencement of service under it. If the employee voluntarily continues his service under it beyond that time, the contract may be referred to as affording a presumptive measure of the compensation.”
There is no decision of the California courts which has determined whether a contract such as the one in question is governed by the above-quoted statute. Defendant contends that the contract in question established a relationship not of employer-employee but one of the status of an independent contractor and that therefore the section relied on does not apply.
Section 2750 of said code defines a contract of employment as one ‘1 by which one, who is called the employer, engages another, who is called the employee to do something for the benefit of the employer or a third person.”
Edwin S. Pillsbury, Esq., plaintiff’s expert on California law, testified on cross-examination that the contract in question ‘ ‘ does not establish, in my opinion, the relationship of employer and employee in the strict sense ’ ’; and further testified that this contract would fall within the category of “ an independent contractor relationship ”, and that Mr. Ketcham was an independent contractor by reason of the fact that there was no “ right of supervision, direction and control.”
Mr. Pillsbury, however, testified that section 2855 of the California Labor Code applied to independent contractors. That the second sentence" of section 2855 relating to contracts to “ render service of a special, unique, unusual, extraordinary, or intellectual character, which gives it peculiar value” had reference to independent contractors and that Mr. Ketcham’s contract was of this type. However, he never stated the basis for his opinion, except that there was a strong public policy *696 (in California) “ to the effect that an employee should be protected by law against improvidently contracting his services away for a longer period than seven years.”
Eeliance is also placed by plaintiff on De Haviland v. Warner Bros. (67 Cal. App. 2d 225). However, in that case the acting was performed by the employee at the direction of her employer at places designated by her employer. In this case, however, plaintiff’s performance was delivery by him at the defendant’s New York office of six daily cartoon panels per week. There was no supervision, plaintiff worked where he pleased. The provision regarding the quality of the panels is usual in certain types of sales or building contracts and does not imply supervision.
Sidney Justin, Esq., defendant’s expert witness on California law, testified that he was ‘ ‘ very intensively ’ ’ acquainted with the provisions of section 2855 by reason of his employment in the legal department of Paramount Pictures Corp. because the section involved all of the employment contracts of the studio. He testified that the contract was one “ to furnish materials ” and similar to contracts between motion picture producers and distributors, whereas the contract in the De Haviland case (supra) was “ a typical employment contract.” He testified that the sole purpose of section 2855 “ was to protect employees ” and that there were no provisions of the Labor Code which he could find which govern independent contractors. He testified that although the word “ employee ” was not used in the second sentence of section 2855 (relating to unique services) it must be read into it. Since the third sentence commences: “If the employee voluntarily continues his service under it ”, the conclusion is inescapable that the word employee must be read into the second sentence.
Furthermore, it should be noted that the first sentence of section 2855 refers to “ employee ”. “ Employee ” is defined by the same Labor Code in subdivision (b) of section 350 as follows: “ (b) Employee ’ means every person including aliens and minors, rendering actual service in any business for an employer, whether gratuitously or for wages or pay and whether such wages or pay are measured by the standard of time, piece, task, commission, or other method of calculation and whether such service is rendered on a commission, concessionaire, or other basis.”
It should also be noted that the defendant is not an “ employer ” as defined by subdivision (a) of section 350 of the Labor Code as follows: “ (a) ‘ Employer ’ means every person engaged in any business or enterprise in this State, which has one or more persons in service under any appointment, contract *697 of hire, or apprenticeship, express or implied, oral or written, irrespective of whether snch person is the owner of the business or is operating on a concessionaire or other basis.”
The above definitions add additional weight to the conclusion of the defendant’s expert, whose opinion seems more compelling. The court adopts his interpretation of the statute that the sentence is only intended to include employees and would exclude independent contractors.
It is obvious that under the usual rules of statutory interpretation the provisions of section 2855 would apply only to the normal employer-employee relationship and not to situations where one of the parties was an independent contractor.
Since the second sentence was not interpreted by the California courts, I believe that we can accept our own definition of an independent contractor as laid down by our Court of Appeals in Hexamer v. Webb (101 N. Y. 377, 385): ££ The test to determine whether one who renders service to another does so as a contractor or not is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. (Shearm. & Redf. on Neg., §76.) In Blake v. Ferris (5 N. Y. 48, 58), within the rule last stated it is held that when a man is employed in doing a job or piece of work with his own means, and his own men, and employs others to help him, or to execute the work for him, and under his control, he is the superior who is responsible for their conduct, no matter for whom he is doing the work. To attempt to make the primary principal or employer responsible in such cases would be an attempt to push the doctrine of respondeat superior beyond the reason on which it is founded (See, also, 56 C. J. S., Master and Servant, § 3, subd. (1), p. 41.)
The evidence also establishes that the parties by their own conduct never considered the relationship to be that of employer-employee. There was never a withholding by the defendant for income taxes or social security; the plaintiff paid all the expenses of producing the cartoons; and the plaintiff in filing his Federal income tax return paid the <£ self employment tax ” which was measured by the income received from the defendant.
The contract provides that: ££ Should Ketcham become incapacitated or unable to deliver the material * * * or in the event of the decease of Ketcham, he or his executors shall have the privilege of employing substitute services to prepare the materials ’ ’ or that the defendant ‘£ shall have the privilege of securing substitute services.”
*698 In either event Ketcham (or his estate) was still to receive the benefits of the contract (less the cost of the substitute).
Ketcham was not an employee and the contract is at best one for his services as an independent contractor. Indeed in most of its aspects it is more a contract of sale or a contract to supply a product rather than services.
There is yet another reason for holding the California Statute inapplicable. The New York conflict of laws rules require a finding that the contract is governed by New York law, under the theory of “ center of gravity ” or the “ grouping of contacts ”. Defendant’s office is and was in New York, all of its operations (other than traveling salesmen) are conducted in New York, including the mat makers, the editorial work, financial work, photoengravers, etc. Performance of the contract by plaintiff was to be by delivery of the panels at defendant’s New York office. The contract was signed in New York by defendant and by ‘ Kennedy Associates, Inc. By J ohn J. Kennedy as agents for Hank Ketcham.” The verified complaint sets forth that Kennedy Associates, Inc. ‘ ‘ executed the contract as agent for the plaintiff ”. Plaintiff prepared the panels at various residences during the years following the execution thereof. Indeed the place where plaintiff or his substitute was to prepare the panels was of absolutely no significance. The most important contact was the place of delivery, the fixed place where all of defendant’s work had to be performed. New York was the place of most significant contact when the contract was signed, was so during the intervening years and is today, and therefore New York law governs (Haag v. Barnes, 9 N Y 2d 554, 559; Auten v. Auten, 308 N. Y. 155).
The first, second and third affirmative defenses have been proven and therefore the California statute will not be applied.
Since we have decided that the California law is inapplicable, the remaining questions to he determined are whether the contract is indefinite and does it lack mutuality.
The issue of mutuality poses no problem. Plaintiff’s argument that the contract lacks mutuality of obligation is adequately answered by a comparison of the facts in this case and those in Wood v. Duff-Gordon (222 N. Y. 88). In this case, the defendant was expressly obligated to produce certain minimum payments to keep the contract in force, whereas in the Wood case (supra) the court merely implied an obligation on plaintiff’s part to use its best efforts. There is thus certainly more basis for finding mutuality than existed in Wood, where the Court of Appeals found mutuality.
*699 Whether or not the contract is indefinite presents a more difficult question and is probably the most important problem to be resolved in this case. The question, however, is not whether the contract is for an indefinite term, it is whether the contract, by its terms, is indefinite as to its duration. If it is, then judicial construction is necessary and thus plaintiff should prevail because it is well settled in New York, that a contract will not be construed to require perpetual performance where another construction is available (Cronk v. Vogt’s Ice Cream, 15 N. Y. S. 2d 649, 654 [1939]; Mitler v. Friedeberg, 32 Misc 2d 78 [1961].) Absent a fixed or determinable duration or an express provision that the duration is perpetual, the contract is one terminable at will (A. S. Rampell, Inc. v. Hyster Co., 3 N Y 2d 369, 382).
The contract in the case at bar is not indefinite as to duration. Paragraphs 4, 5 and 6 provide specifically for termination by either party upon the happening of certain events. The contract provides that it ‘ ‘ shall be for a period of one year * * * and shall renew itself automatically from year to year for additional periods of one year each without the giving of notice by either party to the other, except that each of the parties shall have the right to terminate this agreement at the end of any one year period hereof * * * in the event ” that plaintiff’s share fall below the stipulated amount and the defendant at its sole discretion, to avoid a termination of this agreement, failed to advance the difference in the minimum stipulated amount.
The plaintiff asserts that these provisions render the contract indefinite because they include no specific date for the termination of the contract. This, however, is not the kind of indefiniteness which renders the contract voidable, since specific provision is made for termination. It is this specificity which destroys the plaintiff’s case. The contract is for one year and renewable from year to year, but this, from the terms of the contract itself, appears to have been the intention of the parties. The paragraphs regarding termination clearly provide for automatic renewal and just as clearly give the defendant the right to keep the contract alive in the event certain requirements for automatic renewal are not met. It was the intention of the parties that the contract should run so long as the minimum receipts were realized and that during such period that neither party should be able to desert the other. The strip started as an idea and both parties were to be integral parts of its development, the plaintiff by his creative ability and the defendant by his promotion and salesmanship. The terms of the contract are clear and unambiguous and freely signed by the plaintiff and his agent.
*700 That contracts providing for perpetual performance are not invalid is undoubtedly the law of New York, although no precise holding on this point can be found among the New York cases. For judicial language to this effect, see Cronk v. Vogt’s Ice Cream (supra, p. 654) and Mitler v. Friedeberg (supra).
For contracts which had no calendar fixed date of termination but were held as contracts for a definite term, see Matter of Exercycle Corp. (Maratta) (11 A D 2d 677, affd. 9 N Y 2d 329); Ehrenworth v. Stuhmer & Co. (229 N. Y. 210, 214, 215); Deucht v. Storper (44 N. Y. S. 2d 350, 351). In Exercycle, the contract provided for continuation until the employee voluntarily leaves the employ of Exercycle. In Ehrenworth, the contract was for “ as long as the plaintiff # * remained in business. ” In Deucht, the employment was to be for so long a time as defendant ‘ ‘ continued to employ workers, trained, developed and gathered by plaintiff”. (See Warner-Lambert Pharmaceutical Co. v. John J. Reynolds, Inc., 178 F. Supp. 655, 661 [U. S. Dist. Ct., S. D. N. Y., 1959].)
A square holding on facts virtually identical with those presented herein is Liberty Ind. Sales v. Marshall Steel Co. (272 F. 2d 605 [C. C. A. 7th, 1959]) which the plaintiff takes great pains to distinguish. In that case, as here, the parties considered the duration of the contract. They provided for termination in the event certain quotas were not met. There, as here, the contract did not state specifically the outer limits of the duration of the contract. In finding against the party desiring termination on terms other than those specifically provided for in the contract the court said at page 606, citing Noble v. Reid-Avery Co. (89 Cal. App. 75): “ ‘ Such provisions for the duration of the contract are sufficiently certain and valid. As a general proposition the failure of an executory contract to state a time presently definite for its termination does not render it void for uncertainty.’ ”
The parties have been unable to find other citations dealing with this identical situation. Our independent research indicates that they made an exhaustive search of the authorities.
The defendant, therefore, must prevail. Contracts which are vague as to their duration generally will not be construed to provide for perpetual performance, but where, such as the case here, the contract is not vague, no judicial construction is necessary.