67 Wall Street Company, Appellant, *v.* Franklin National Bank, Respondent.

First Department, April 18, 1972.

*Martin Kleinbard* of counsel (*Cameron Clark* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for appellant.

*Benjamin Heller* of counsel (*Hein, Waters, Klein & Zurkow,* attorneys), for respondent.

McGivern, J. In August of 1969, the plaintiff, 67 Wall Street Company, and the defendant, Franklin National Bank, began negotiations for a lease of five floors and some ground floor space at 67 Wall Street. At an annual rental of $567,000, the term was to end in 1985, representing an involvement of about $9,000,000. The lease, now in litigation, was executed on October 20, 1969. At the time, the leasehold was occupied by the Inter-

national Nickel Company, Inc., which had undertaken to move to another address, making way for the bank. But, come August 31, 1970, Nickel had not yet vacated the premises, and so the bank sent plaintiff a letter purporting to cancel the lease pursuant to article 41 of the lease, which reads: '' Tenant understands that the demised premises are presently occupied by the International Nickel Company, Inc. ('INCO'). INCO has indicated to Landlord that it will vacate the demised premises on or about January 1, 1970. Landlord shall give notice to Tenant promptly after being advised by INCO of the date on which it actually will vacate, but Tenant understands that Landlord does not and cannot guarantee or assure Tenant possession of the demised premises until INCO does actually vacate. If INCO has not vacated the demised premises by August 31, 1970, either party may cancel this lease by giving sixty (60) days notice to the other, and on the date fixed in such notice, this lease shall terminate and expire, both parties shall be relieved of all obligation hereunder and Landlord shall refund to Tenant any rent prepaid by Tenant.'' The plaintiff would hold the bank to the lease, on its contention that the space actually was available within the 60-day period, as quoted, *supra.*

At Special Term, the plaintiff landlord moved for partial summary judgment, seeking the dismissal of the bank's first affirmative defense, which asserts that the lease is void because it lacks a commencement date; that part of the first counterclaim which demands a declaration that the lease is void for the same reason, i.e., that it lacks a commencement date; and the second counterclaim, which would rescind the lease on the theory that 67 Wall Street Company defrauded the bank into executing the lease.

Special Term, New York County (FEIN, J.), denied the motion *in toto.* We disagree. In our judgment, the order, November 9, 1971, must be reversed, on the law, and the plaintiff's motion for partial summary judgment granted with costs and disbursements.

Treating the defendant's first affirmative defense and first counterclaim simultaneously, as they are essentially one, we believe they should both be dismissed. They are both predicated on the untenable postulate that the lease is unenforceable for the lack of a commencement date. In our view, the lease provided for a definitely ascertainable commencement date, and the pretrial examinations demonstrate the bank's anticipation that the lease would commence when the demised premises were vacated by Nickel. The lease adequately said that as soon as the date upon which Nickel would vacate the premises became known to the landlord, the landlord was to notify the new tenant.

It further provided that the landlord could not guarantee the new tenant possession until the old tenant actually vacated. The mere fact that the parties pegged the commencement of the lease to the date upon which the International Nickel Company, Inc. would vacate the space, does not render the lease void. The point is established. It is not unusual for contractual obligations to fall in at some presently unknown time in the future, hinging on an agreed contingency. (*United Chem. & Exterminating Co.* v. *Security Exterminating Corp.*, 246 App. Div. 258; *Rentways, Inc.* v. *O'Neil Milk & Cream Co.*, 308 N. Y. 342. See, also, *Ketcham* v. *Hall Syndicate*, 37 Misc 2d 693 [Sup. Ct., N. Y. County, 1962]; *Deucht* v. *Storper*, 44 N. Y. S. 2d 350 [City Ct., N. Y. County, 1943]. Cf. *Matter of Exercycle Corp.* [*Maratta*], 11 A D 2d 677 [1st Dept. 1960], affd. 9 N Y 2d 329 [1961]; and *Ehrenworth* v. *Stuhmer & Co.*, 229 N. Y. 210 [1920].)

The second counterclaim even more readily lends itself to summary treatment. We find nothing in this submission to sustain any possible conclusion that 67 Wall Street Company fraudulently represented the building was possessed of sufficient electrical power or capacity to satisfy any and all of the bank's needs. The record is the other way, that the bank relied on its own expert, and the landlord was not given any hard information, prior to the signing of the lease, in respect of the bank's prospective electrical needs. Indeed, it is clear that six months after the signing, the bank itself still had not formed definite conclusions on such requirements. Thus, we conclude that subjecting this issue to the trial process would be an utter waste of court time.

Accordingly, we grant partial summary judgment, as requested; but we do not reach the still open question as to the availability or nonavailability of the premises during the 60-day period subsequent to the bank's notice, as that question is not before us on this appeal.

STEVENS, P. J., MARKEWICH, STEUER and CAPOZZOLI, JJ., concur.

Order, Supreme Court, New York County, entered on November 9, 1971, unanimously reversed, on the law, and plaintiff's motion for partial summary judgment granted. Appellant shall recover of respondent $50 costs and disbursements of this appeal.