KLUG, Respondent, v. FLAMBEAU PLASTICS CORPORATION, Appellant.

*No. 321. Argued January 3, 1974.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 281.)

142

144

146

For the appellant there were briefs by *John G. Vergeront,* and *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S. C.,* all of Milwaukee, and oral argument by *John G. Vergeront.*

For the respondent there was a brief by *Herro, Snyder, Chapman & Snyder* of Oconomowoc, and oral argument by *William Chapman.*

ROBERT W. HANSEN, J.   On the question of liability or basis of liability, the question to be answered is: Did the defendant corporation have the right to terminate its contract with plaintiff as long as plaintiff met or maintained a $75,000 per quarter sales quota?

*Terms of agreement.* Two provisions in the sales representation agreement are immediately involved in the answer to that question. One is the provision in the contract that either party may terminate by giving a ninety-day written notice to the other. The second is the provision, initially proposed by Flambeau, that plaintiff was to continue to represent it for as long as his total sales maintained a minimum level of $75,000 per quarter. Plaintiff argues that the second provision is a condition or limitation on the right of the defendant corporation to terminate under the ninety-day notice provision, and we agree that it is. Defendant corporation also apparently agrees, for its position is that the addition of the restricting provision transforms the representation agreement into a permanent or indefinite hiring terminable at the will of either party.

*Terminable at will?* Does the restriction on the right of the defendant corporation to terminate, except for good cause, make this either a contract for permanent employment or one for an unspecified or indefinite term that thereby becomes terminable at will of either party? [1]

---

[1] *Forrer v. Sears, Roebuck & Co.* (1967), 36 Wis. 2d 388, 393, 153 N. W. 2d 587, stating: "Generally speaking, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party . . . . The presumption is grounded on a policy that it would otherwise be unreasonable for a man to bind himself

We have held that a contract for some specified amount or percentage commission per week, month or year will be construed as a contract for an indefinite hiring only "in the absence of facts or contractual provisions showing a contrary intent." [2] Here the provision, limiting the right of the corporation to terminate on notice unless a certain quota is not maintained, is clear and unambiguous. It was suggested by the defendant corporation that now attacks it. Both an unambiguous provision and a shared intent to protect the representative against a ninety-day notice termination are evident. But, more fundamentally, it is not required to escape its being found to be indefinite that a contract of this type name a specific date on which it will expire. It is enough to contractually provide that the contract will end on the happening of a specific event, even though it is not possible to name the date when that event will occur. [3] An early decision

permanently to a position, thus eliminating the possibility of later improving that position. Moreover, a contract of permanent employment is by its very nature indefinite, and thus any effort to interpret the duration of the contract and assess the amount of damages becomes difficult. . . ." *See also: Smith v. Beloit Corp.* (1968), 40 Wis. 2d 550, 555, 162 N. W. 2d 585, stating: ". . . The usual and accepted definition of the term 'permanent employment' is that it refers to the ordinary business contract for a continuing employment, terminable at the will of either party."

[2] *Forrer v. Sears, Roebuck & Co., supra,* footnote 1, at page 393, citing *Kovachik v. American Automobile Asso.* (1958), 5 Wis. 2d 188, 190, 191, 92 N. W. 2d 254, which states: ". . . a hiring at some specified amount per week, per month, or per year will be construed as a contract for an indefinite hiring only, which may be terminated at the will of either party, in the absence of facts or contractual provisions showing a contrary intent. . . ." And, of the contract involved states: ". . . it not only contains nothing to show an intention to permit termination only for cause, but on the contrary we think it affirmatively authorizes termination at will on three days' notice. . . .

"We consider the terms of the contract so clear . . . ."

[3] 17 Am. Jur. 2d, *Contracts,* pp. 420, 421, sec. 80; 17A C. J. S., *Contracts,* p. 456, sec. 385 (1); *Consolidated Laboratories, Inc. v. Shandon Scientific Co.* (7th Cir. 1969), 413 Fed. 2d 208;

in this state upheld a partnership contract entitling a plaintiff to one half the net profits of a quarry for "so long as it could be profitably worked," rejecting the claim that such contract was indefinite.[4] Other jurisdictions have held contracts limiting the option to terminate to the happening of an event or failure to meet an agreed quota not to be indefinite or invalid.[5] Here the defendant corporation first proposed and then agreed to a contractual assurance to its sales representative that if he built up the business to a certain level and maintained that quota of sales, it would not exercise its right to terminate on ninety-day notice. To hold that such assurance converted the agreement into an indefinite contract, terminable at will of either party, would be contrary to

*Pumphrey v. Pelton* (1968), 250 Md. 662, 245 Atl. 2d 301; *Donahue v. Rockford Showcase & Fixture Co.* (1967), 87 Ill. App. 2d 47, 230 N. E. 2d 278. *See also:* L. Simpson, *Contracts* (2d ed.), p. 74, sec. 48, stating: ". . . However, a provision that performance is to continue until the happening of a stated event fixes the duration of the contract with sufficient certainty no matter how uncertain the time of happening of the event may be."

[4] *Treat v. Hiles* (1892), 81 Wis. 280, 287, 50 N. W. 896.

[5] *See: Liberty Industrial Sales, Inc. v. Marshall Steel Co.* (7th Cir. 1959), 272 Fed. 2d 605, 606, 607, holding sales contract sufficiently definite where the " '. . . agency agreement outlined above may be canceled by either party upon a 30-day written notice provided quotas set forth in the fifth paragraph are not met.' "; *Ketcham v. Hall Syndicate, Inc.* (N. Y. Sup. Ct. 1962), 37 Misc. 2d 693, 699, 236 N. Y. Supp. 2d 206, affirmed (1963), 19 App. Div. 2d 611, 242 N. Y. Supp. 2d 182, holding enforceable a contract that was to continue from year to year unless ". . . plaintiff's share fall below the stipulated amount and the defendant at its sole discretion, to avoid a termination of this agreement, failed to advance the difference in the minimum stipulated amount."; *Foster-Porter Enterprises v. De Mare* (1951), 198 Md. 20, 35, 81 Atl. 2d 325, stating: ". . . Section 10 of the contract expressly gives either party 'the right to terminate the agreement . . . upon the happening of any one of [three specified] events of default' . . . . Construction of the contract as terminable at will would defeat its purpose and would make section 10 meaningless."

the clear intent of both parties and would make the contractual provision worse than meaningless by substituting termination at will for even a ninety-day notice of cancellation. Such construction is not here required. We hold the contract in this regard not to be either "permanent" or indefinite.

*Lack of mutuality.* Defendant's second line of defense is that the provision in the commission schedule, made part of the contract, restricted only the defendant corporation to not giving a ninety-day notice as long as a certain sales quota was met. Obviously, the case for mutuality would be stronger if the restriction on right to terminate by notice applied to both parties.[6] However, as this court has pointed out, a contract does not lack mutuality "merely because every obligation of one party is not met by an equivalent counterobligation of the other party." [7] Mutuality of obligation means sufficient consideration so that one promise of one party to a bilateral contract may support one or more promises of the other party.[8] Here two obligations were made part

[6] *See: Goff v. Massachusetts Protective Asso., Inc.* (1970), 46 Wis. 2d 712, 717, 176 N. W. 2d 576, stating: "An attack is made upon the contracts as being void for lack of mutuality and illegal because of their forfeiture clauses. Because both parties had a right on thirty days' notice to terminate the agreements does not render the contracts lacking in mutuality either of consideration or of remedy, nor is a contract necessarily illegal because of a forfeiture. . . ."

[7] *Levin v. Perkins* (1961), 12 Wis. 2d 398, 403, 107 N. W. 2d 492, stating: ". . . mutuality of obligation in a bilateral contract does not mean the liabilities of both parties or the benefits accruing must be equal. Neither does a contract lack mutuality of obligation merely because every obligation of one party is not met by an equivalent counterobligation of the other party. . . ."

[8] *Id.* at page 403, stating: "The mutuality of obligation means sufficient consideration, *i.e.,* a promise needs consideration to be binding and enforceable. . . . A promise of one party to a bilateral contract may support one or more promises of the other party. While both parties must be bound in a bilateral contract

of the contract by incorporation from the commission agreement: (1) That defendant corporation would not terminate by notice as long as a certain sales level was reached and maintained; and (2) the plaintiff would be required to become a full-time employee if the sales level reached a certain and different level. In addition to thus agreeing to cease sales for any other client when his earnings under the contract reached $6,250 for two successive quarters, the plaintiff contractually agreed to use his best efforts to sell for Flambeau, not to sell competitive products, and to forego commissions for ninety days and not to compete for one year if he elected to terminate the contract by notice. This is not a contract where only one party, or neither, could compel the other to do anything.[9] The provision that plaintiff could not terminate the contract except on written, ninety-day notice was itself a sufficient detriment so as to insure mutuality of obligation.[10] The agreement not to compete

so that in case of a breach by either, the other would have a right of action therefor, both parties need not be equally bound or to the same extent or have the same remedy for a breach. . . ." Citing *Jones v. Wixom* (1919), 170 Wis. 314, 174 N. W. 895; 12 Am. Jur., *Contracts*, p. 608, sec. 114. *See also: Clarke Floor Machine Co. v. De Vere Chemical Co.* (1960), 9 Wis. 2d 517, 522, 101 N. W. 2d 655, stating: ". . . This court has frequently held that even where there is not promise for promise in an agreement between principal and agent, the agent's efforts in pursuance of the agreement may be sufficient to give the contract mutuality."

[9] *See: First Wisconsin Nat. Bank v. Oby* (1971), 52 Wis. 2d 1, 8, 188 N. W. 2d 454, stating: ". . . Thus, the agreement at the time of its execution did not constitute a binding or enforceable contract since neither party could compel the other to do anything. . . ." But holding obligations arose when certain conditions were met, and stating: "The test of mutuality of obligation, and therefore sufficiency of consideration, is not to be applied at the time the respective promises are made, but rather as of the time when one or the other is sought to be enforced."

[10] *See:* 17 Am. Jur. 2d, *Contracts*, pp. 969, 970, sec. 496; 17 C. J. S., *Contracts*, p. 808, sec. 100 (6); 1A Corbin, *Contracts* (1963 ed.), p. 83, sec. 164.

and to forego commissions if he were to terminate added to that detriment. There is a mutuality to the obligations assumed by the parties under the contract. The provision for suspension of defendant corporations' right to terminate, except for cause, does not fail for lack of mutuality.

*Termination for cause.* As its third line of defense the defendant corporation, in its reply brief, contends that the contract was terminated for cause and no notice was required. It is true that if the contract had been terminated for cause no notice would have been required.[11] But the letter of termination sent by defendant corporation made no reference to the plaintiff's not having lived up to his obligations under the contract. It did not evidence dissatisfaction with his performance, saying only that the company had decided "our interest would best be served over the years to come by making a change in personnel." The vice-president in charge of sales for the defendant corporation testified that plaintiff's sales volume increased steadily from June, 1968, to the sending of the notice of termination, and that there had been no specific complaints concerning his work in the second quarter of 1968. He further testified that the reason plaintiff was terminated was that he had been offered a full-time position with the company and had declined the offer. In the answer to plaintiff's complaint, the defendant corporation conceded that ". . . the plaintiff entered upon his employment under the Agreement and performed his duties thereunder and satisfied all conditions of the Agreement until September 4, 1968 . . . ." On the pleadings and the record, we find no basis for treating the termination of the contract as a termination for cause.

---

[11] *Tollefson v. Green Bay Packers, Inc.* (1950), 256 Wis. 318, 323, 41 N. W. 2d 201, stating: ". . . An employer may discharge an employee for cause at any time without incurring liability even though the employee is engaged for a definite term as plaintiff was here. 35 Am. Jur., Master and Servant, p. 470, sec. 36."

*No right to terminate.* Holding that the termination provision in the contract here applicable was not indefinite, did not lack mutuality and that the termination here was not for cause compels the holding that the termination of this contract by defendant corporation was not proper or provided for by the contract. It follows that the trial court holding that defendant corporation was entitled to terminate the contract as it attempted must be reversed and set aside. Likewise, the trial court holding that the contract provision for payments after a valid termination was inequitable is reversed and set aside, particularly because that ruling is not required and that provision not applicable in case of a wrongful termination attempt not provided for in the contract.

*Matter of damages.* Holding that defendant corporation did not have the right to terminate the contract brings us to the matter of damages. Plaintiff strongly urges that if this court finds the termination to have been wrongful we proceed to determine the basis for determining damages, the time or period of months involved, the matter of mitigation and the computation or fixing of damages owed by defendant corporation to the plaintiff. It is true that the stipulation of the parties and findings of fact made by the trial court provide an approach to doing what is urged, but only partially so. For example, as to the matter of mitigation of damages, the defendant corporation contends that plaintiff failed to make reasonable efforts to find a replacement plastics manufacturer to represent and that even without such a replacement plaintiff's increase in commissions from sales for new clients not in the plastics business is to be offset against his losses. Plaintiff countered that he contacted five firms in the plastics business, seeking to be their sales representative. Defendant corporation countered that it had about 15 competitors in this state, and several hundred in the Wisconsin-Michigan-Illinois

area. The injured party in an employment-type contract breach must use ordinary care and make reasonable efforts to mitigate damages,[12] with the burden of proof of showing the injured party might have obtained substitute employment being on the breaching party.[13] The trial court made no specific finding on the matter of mitigation. We see no reason to begin the determination of damages when, on this record, we could not complete it. With the basis for recovery shifted from damages due for a termination by notice under the contract to a wrongful termination contrary to the provisions of the contract, we remand to the trial court for the determination of damages due the plaintiff from the defendant corporation.

*By the Court.*—Judgment reversed and cause remanded to the trial court for the determination of damages. Costs to respondent.

---

[12] *Tetzlaff v. Pilot Press, Inc.* (1955), 270 Wis. 214, 217, 70 N. W. 2d 678; *Gauf v. Milwaukee Athletic Club* (1912), 151 Wis. 333, 335, 139 N. W. 207.
[13] *Winkler v. Racine Wagon & Carriage Co.* (1898), 99 Wis. 184, 74 N. W. 793.