■ JOHN T. SMITH et al., Respondents, v ROBERT D. LONG et al., Appellants. (Appeal No. 1.) [723 NYS2d 584] —Order unanimously modified on the law and as modified affirmed without costs in accordance with the following Memorandum: Plaintiffs, John T. Smith and George L. Smith, Jr., entered into discussions with Robert D. Long and Tracey Long (defendants) to form a corporation that would be eligible for minority business enterprise (MBE) status and would compete in the same field as JTS Computer Services, Inc., a business owned by plaintiffs. On October 13, 1994, plaintiffs and defendants executed a formation agreement (Formation Agreement), naming the new corporation Long & Associates, Inc. (L & A) and setting forth, *inter alia,* their respective services and responsibilities. On November 30, 1994, plaintiffs and Tracey executed a pre-incorporation agreement (Pre-Incorporation Agreement) providing for the positions of directors and officers as well as the capitalization of the corporation. Of the 200 shares of common stock, 102 were to be purchased by Tracey, 78 by John and 20 by George, all at a price of "ten cents ($.10) per share."

Defendant L & A applied for a loan from Marine Midland Bank and certification as an MBE from the Small Business Administration (SBA). Both applications were denied. Defendants learned that the SBA application was denied based, *inter alia,* on the ownership percentages of plaintiffs and the fact that plaintiffs had previously had problems with SBA loans. On July 27, 1995, John transferred all of his shares of stock to Robert, and George transferred two shares of stock to Robert, thereby reducing George's ownership below 10%. On the same date, John and defendants executed an agreement (Buy-Back Agreement) that provided: "Tracey Long and Robert D. Long agree to sell to John T. Smith, 78 shares of stock (representing 39%) ownership in Long & Associates, Inc. for a fee of one-dollar ($1.00) at any time within the next 8 year period starting on July 28, 1995 thru July 27, 2003."

On November 2, 1996, plaintiffs and defendants executed an "Addendum to Agreement" (Addendum Agreement) providing that, despite the transfer of John's shares, John "has not relinquished his rights under the original agreement or stock ownership. All parties will continue to be bound by good faith of the original agreement and will share in the profits and distributions of them as specified."

Relations between plaintiffs and defendants deteriorated and, on January 22, 1997, John sought to enforce his right to reacquire 78 shares under the Buy-Back Agreement. When defendants refused to transfer the stock, plaintiffs commenced this action in which John sought, *inter alia*, to enforce the Buy-Back Agreement, and plaintiffs sought accrued profits and an accounting. Defendants interposed five affirmative defenses and three counterclaims, seeking a declaration that George's stock was null and void and damages against plaintiffs for breach of the Formation Agreement. Supreme Court granted that part of plaintiffs' motion seeking summary judgment on the first and second causes of action, and under CPLR 3212 (g) dismissed the third cause of action, in effect granting in part defendants' cross motion to dismiss the complaint. It denied the remainder of defendants' cross motion. In addition, pursuant to CPLR 3212 (g), the court granted plaintiffs summary judgment on the fourth cause of action and by virtue of the relief granted plaintiffs it explicitly dismissed the first and second counterclaims and the affirmative defenses.

Defendants contend that the court erred in granting plaintiffs' motion for summary judgment on the first and second causes of action and in dismissing the third affirmative defense. We agree. The first and second causes of action allege that defendants violated the Buy-Back Agreement by failing to provide John with his shares. The first seeks specific performance and the second seeks damages. The third affirmative defense alleges that plaintiffs were attempting to perpetrate a fraud on the SBA and that, based on the unclean hands doctrine, John cannot seek to enforce the Buy-Back Agreement. "[U]nclean hands in participating in a course of conduct of deception and deceit is an effective bar" to causes of action to enforce the agreement that results from that deception and deceit (*Ta Chun Wang v Chun Wong*, 163 AD2d 300, 302, *lv denied* 77 NY2d 804, *cert denied* 501 US 1252; *see, Farino v Farino*, 88 AD2 902). The unclean hands doctrine rests on the premise that one cannot prevail in an action to enforce an agreement where the basis of the action is "immoral and one to which equity will not lend its aid" (*Muscarella v Muscarella*, 93 AD2d 993). Thus, one who has executed an agreement to perpetrate a fraud has "forfeited his right, in law or equity, to protection or recourse in a dispute involving his accomplices in that very scheme" (*Ta Chun Wang v Chun Wong, supra*, at 302; *see, Jossel v Meyers*, 212 AD2d 55, 57-58). Here, there is an issue of fact whether John executed the Buy-Back Agreement to perpetrate a fraud on the SBA.

Plaintiffs both seek an accounting in their fourth cause of ac-

tion. If both plaintiffs are shareholders, "allegations of the plaintiff[s'] unclean hands will not relieve [defendants] of their duty to account to the plaintiff[s]" (*Pittoni v Boland*, 249 AD2d 458; *see, Mehlman v Avrech,* 146 AD2d 753, 754; *Dwyer v Nicholson,* 109 AD2d 862, 863; *cf., Cohen v Katz,* 242 AD2d 448). Because the Buy-Back Agreement affects only John's status as a shareholder, defendants' duty to account to George remains; the duty to account to John, however, depends on John's status as a shareholder and is contingent on resolution of the allegations of fraud. The court therefore erred in awarding plaintiffs summary judgment on the fourth cause of action insofar as it relates to defendants' duty to account to John.

Defendants' first counterclaim, that George is not entitled to shares of stock because the shares of stock had originally been issued in exchange for future services, lacks merit. Defendants contend that such an agreement violates Business Corporation Law former § 504 and, because plaintiffs failed to provide those services, the shares issued to plaintiffs are null and void. We agree with plaintiffs that the issuance of stock under the Pre-Incorporation Agreement was not conditioned on the performance of future services. Rather, the consideration for the issuance of stock was the payment of money. Nothing in the Formation Agreement or the Pre-Incorporation Agreement conditioned the issuance of stock on the performance of future services. Thus, the court properly dismissed the fifth affirmative defense, alleging breach of the Formation Agreement, and first counterclaim, alleging that George's shares should be declared null and void because George provided no services.

Defendants further contend that plaintiffs are not entitled to summary judgment in any respect because defendants signed the Buy-Back and Addendum Agreements under duress. We reject that contention. Defendants failed to present any evidence that they were "forced to agree to [the agreements] by means of a wrongful threat precluding the exercise of [their] free will" (*Austin Instrument v Loral Corp.*, 29 NY2d 124, 130, *rearg denied* 29 NY2d 749; *see, 805 Third Ave. Co. v M.W. Realty Assocs.,* 58 NY2d 447, 451). The alleged threats by plaintiffs were not of such a degree as to leave defendants with no " 'practical alternative' " (*Matter of Podmore v Our Lady of Victory Infant Home,* 82 AD2d 48, 51).

The court properly dismissed the second and fourth affirmative defenses and the second counterclaim, alleging fraud in the inducement with respect to the Formation and Pre-Incorporation Agreements. Plaintiffs submitted evidence that there was no fraud with respect to those agreements, and

defendants failed to set forth facts to support their conclusory allegations that plaintiffs made misrepresentations before those agreements were executed. Thus, the facts were not in dispute (see, CPLR 3212 [g]).

Defendants failed to brief any issue regarding dismissal of the first affirmative defense. Further, defendants failed to brief the issue concerning the court's refusal to consider papers submitted by them as a surreply. Those issues are therefore deemed abandoned (see, Ciesinski v Town of Aurora, 202 AD2d 984). Plaintiffs did not appeal from that part of the order awarding summary judgment to defendants on the third cause of action.

We therefore modify the order by denying plaintiffs' motion seeking summary judgment on the first and second causes of action and vacating the award of summary judgment to plaintiffs on the fourth cause of action insofar as it relates to John. In addition, we modify the order by vacating the dismissal of the third affirmative defense and reinstating that affirmative defense. (Appeal from Order of Supreme Court, Monroe County, Stander, J.—Summary Judgment.) Present— Pigott, Jr., P. J., Green, Pine, Hurlbutt and Burns, JJ.