COMPANIA EMBOTELLADORA DEL PACIFICO, S.A., Plaintiff,

v.

PEPSI COLA CO., Defendant.

No. 00 Civ. 7677(JSR).

United States District Court, S.D. New York.

April 14, 2009.

Robert Yancy Lewis, Freeman Lewis LLP, New York, NY, for Plaintiff.

Michael Lazaroff, Proskauer Rose LLP, New York, NY, for Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiff Compania Embotelladora Del Pacifico, S.A. ("CEPSA") filed the above-captioned action against defendant Pepsi Cola Company ("PepsiCo") on October 11, 2000, seeking damages for PepsiCo's alleged breach of an Exclusive Bottler Appointment Agreement ("EBA" or "Agreement") that appointed CEPSA as PepsiCo's exclusive bottler for certain parts of Peru. The case was originally before the Honorable Richard Owen, and

was reassigned to the undersigned on September 5, 2008. On October 17, 2008, *i.e.*, eight years after filing its original Complaint but within the final deadline set by the Court, CEPSA filed a First Amended Complaint, adding claims for breach of fiduciary duty and willful destruction of business. PepsiCo, in turn, moved to dismiss these newly added claims, along with CEPSA's breach of contract claim for wrongful termination. On December 18, 2008, the Court granted PepsiCo's motion. *See* 12/18/08 transcript.

CEPSA now seeks leave to amend its Complaint for a second time, so that it can assert a claim for reformation of the EBA based on an alleged "mutual mistake" between the parties. CEPSA's proposed Second Amended Complaint alleges that, notwithstanding the EBA's express language, the parties "intended, believed and agreed that the EBA was perpetual in duration or terminable only for the specified causes" enumerated in paragraph 22 of the Agreement, and that the EBA "failed to sufficiently or technically document and articulate this mutual intent." Proposed Second Amended Complaint ("SAC") ¶¶ 145, 148.[1] Because CEPSA has failed to show good cause to amend, and because, in any event, the proposed amendment would be futile, CEPSA's motion is hereby denied.

■■■ *First*, it bears emphasizing that CEPSA filed the instant motion to amend well past the October 17, 2008 deadline for the filing of amended pleadings in this action. In order to prevail in such circumstances, CEPSA must demonstrate "good cause" for its failure to comply with the Court's scheduling order. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000); *see* Fed.R.Civ.P. 16(b).

Good cause is measured by the moving party's diligence in attempting to meet the deadline set by the Court, *Parker*, 204 F.3d at 340, and courts have found good cause to be lacking where, as here, the moving party "had knowledge of the facts and circumstances in the case for a period of several years and could have made their motion within the specified time period." *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F.Supp.2d 134, 150 (S.D.N.Y. 2003); *see Parker*, 204 F.3d at 340–41 (denying leave to amend under Rule 16 where the moving party possessed "all the information necessary" to support his claim before bringing suit).

Here, CEPSA has failed to offer any explanation for its delay in asserting a claim for reformation based on a mutual mistake concerning the at-will status of the EBA. Indeed, to the contrary, any allegations concerning the negotiations for the EBA (which took place in 1952) were known or should have been known by CEPSA long before the instant action was filed. Moreover, it is patent that CEPSA knew as early as March 1999 (well over a year before this action was commenced) that PepsiCo took a different view of the EBA, and did not believe that there was a "mistake" concerning its ability to terminate the EBA without cause. *See* Declaration of Constantino Heredia Ex. 22 at 2 (March 12, 1999 letter terminating the EBA, noting PepsiCo's view that the EBA did not "have a fixed contractual or legal term"). PepsiCo reiterated this position when it filed its Answer and Counterclaims on December 29, 2000. *See* Answer ¶ 116 ("[t]he operative agreements between the parties were terminable at will with or without cause"). Because any alleged need for reformation became clear upon

---

1. Without explanation, CEPSA's proposed Second Amended Complaint also continues to allege claims for breach of fiduciary duty and willful destruction of business, notwithstanding the Court's dismissal of these claims on December 18, 2008. *See* SAC ¶¶ 136–143.

PepsiCo's repeated assertion that the EBA was of indefinite duration, CEPSA cannot now, after nearly nine years of litigation, demonstrate good cause for its failure to timely assert such a claim.

■ Moreover, even assuming (contrary to fact) that CEPSA has shown good cause to make an untimely amendment, its motion nevertheless fails to satisfy even the less exacting requirements of Rule 15(a), under which motions to amend are generally denied in instances of undue delay. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir.2008). Here, as noted, the essence of the alleged mistake was plain on the face of PepsiCo's March 1999 termination letter and 2000 Answer, and CEPSA's belated motion seeks reformation based on allegations it could have asserted in either or both of its earlier pleadings, long before the Court's dismissal of CEPSA's wrongful termination claim. Although Rule 15 permits leave to be freely given "when justice so requires," Fed. R.Civ.P. 15(a), a party cannot wait to "see how he would fare on [a] prior motion to dismiss" before seeking leave to amend based on facts that were available before the motion was decided. *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 637 (2d Cir.1967). In circumstances such as this, it is thus "certainly within [this Court's] discretion to deny leave to amend" because of such undue delay. *Id.*

■ *Second*, even assuming that CEPSA has demonstrated good cause to amend (which it has not), any such amendment would be futile. As the Court emphasized in dismissing CEPSA's wrongful termination claim, if the parties to a contract intend for it to be perpetual, they must expressly say so. *Warner–Lambert Pharm. Co. v. John J. Reynolds, Inc.*, 178 F.Supp. 655, 661 (S.D.N.Y.1959); *see Ketcham v. Hall Syndicate, Inc.*, 37 Misc.2d 693, 699, 236 N.Y.S.2d 206 (N.Y.Sup.Ct.1962) ("Absent a fixed or de-

terminable duration or an express provision that the duration is perpetual, the contract is one terminable at will"); *Cronk v. Vogt's Ice Cream, Inc.*, 15 N.Y.S.2d 649, 654 (N.Y.Sup.Ct.1939) ("True it is that the parties could have stipulated for performance perpetually, but it is a sufficient answer that they did not do so, and that *no such conclusion is ever warranted in the absence of clear and unequivocal language which compels it*") (emphasis added). Here, as noted, the EBA has no definite term and provides no end date for its duration. To permit reformation of an at-will contract such as the EBA to reflect the parties' alleged "mutual intent" would, in essence, amount to a tacit refusal to follow this long line of cases concerning contracts for an indefinite duration. Such a result would be fundamentally at odds with well-established New York law and public policy, thus demonstrating the futility of any amendment in this case.

■ Nor has CEPSA adequately alleged any actionable mistake of fact. CEPSA seeks reformation of the EBA based on the notion that when the parties entered into the EBA, they both believed (albeit mistakenly) that the contract was perpetual and forever binding on both parties. Under New York law, however, "a mutual mistake must be as to a fact, and not as to the legal consequences of the contract into which the parties are entering." *Cobalt Multifamily Investors I, LLC v. Bridge Capital (USVI), LLC*, 06 Civ. 5738, 2007 WL 2584926, at *9 (S.D.N.Y. Sept.7, 2007); *see Travelers Indem. Co. of Illinois v. CDL Hotels USA, Inc.*, 322 F.Supp.2d 482, 497 (S.D.N.Y. 2004) ("mistake means being in error in one's belief as to what the contract states") (quotation omitted); *Jossel v. Meyers*, 212 A.D.2d 55, 57, 629 N.Y.S.2d 9 (1st Dep't 1995) (a "party who had an opportunity to know the contents of the instrument can-

not obtain cancellation or reformation because he misunderstood the legal effect of the whole or any of its provisions"); *Gonzalez v. Green,* 14 Misc.3d 641, 648, 831 N.Y.S.2d 856 (N.Y.Sup.Ct.2006) (misunderstanding of legal effect of contract cannot form the basis for rescission where parties were aware of the terms of contract).

Here, CEPSA has not identified any language, term, phrase, or clause that was inadvertently omitted from the EBA, nor has it alleged any mistaken understanding as to any fact that was material to the negotiation or drafting of the EBA. Instead, CEPSA merely contends that the language that the parties mutually agreed to in the EBA "is at variance with the parties' intent, belief and agreement." SAC ¶ 148. In other words, CEPSA claims that is misunderstood the legal effect of the EBA's language. In such circumstances, reformation is not available. *See Loewenson v. London Mkt. Cos.,* 351 F.3d 58, 59 (2d Cir.2003) (holding that "the parties agreed not only to the amount to be returned but also to the flawed methodology by which the amount was determined, and that such circumstances do not constitute the sort of mutual mistake that warrants reformation under applicable New York law"); *Jossel,* 212 A.D.2d at 57, 629 N.Y.S.2d 9 ("equity will not grant a rescission although one of the parties … may have mistaken or misconceived its legal effect").

■ In a similar vein, CEPSA has failed to point to any admissible, contemporaneous evidence of the parties' alleged mutual mistake. In order to support a claim for reformation based on mutual mistake, CEPSA must offer evidence and allegations that reflect the prior or contemporaneous understanding of the parties at the time of the EBA's execution. *See Investors Ins. Co. v. Dorinco Reins. Co.,* 917 F.2d 100, 105 (2d Cir.1990) (affirming summary judgment dismissing reformation claim, where "no evidence whatsoever" was offered that defendant "was similarly mistaken as to the meaning of the indemnification clause"); *Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 98 F.Supp.2d 498, 507 n. 5 (S.D.N.Y.2000) (denying leave to amend to add claim for reformation based on mutual mistake, where defendant "offer[ed] no evidence of an understanding on [plaintiff's] part, contemporaneous with the extension of the policy to cover [plaintiff], different from the plain language of the contract"); *George Backer Mgmt. Corp. v. Acme Quilting Co.,* 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (1978) (a party seeking reformation must "show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties"). Here, the absence of any evidence that PepsiCo's understanding of the EBA at the time of its execution differed from the EBA's actual language offers further confirmation that any amendment at this late stage of the litigation would be futile.

Accordingly, for all of the foregoing reasons (any one of which is alone sufficient), CEPSA's Motion for Leave to Add a Claim for Reformation of Contract is hereby denied. The Clerk of the Court is directed to close document number 99 on the Court's docket.

SO ORDERED.